

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 1 - 2004

LUTHER D. THOMAS, Clerk
By: *J. Pinkiny* Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LARRY WHISTLER                    )
a/k/a LARRY ZBYSZKO               )
a/k/a THE LIVING LEGEND,          )
an individual,                    )
                                  )
         Plaintiff,               )
                                  )      Civil Action
                                  )      No. 1-02-CV-1008-CC
     v.                           )
                                  )
WORLD WRESTLING                   )
ENTERTAINMENT, INC., a Delaware   )
corporation,                      )
                                  )
         Defendant.               )
_____ )

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TRADEMARK-RELATED ISSUES[1]

COMES NOW Larry Whistler a/k/a Larry Zbyszko a/k/a THE LIVING LEGEND (hereinafter "Plaintiff"), by and through his attorney, Joel D. Myers, Myers & Kaplan, Intellectual Property Law, L.L.C., hereby files this Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment on Trademark-Related Issues in the above action and shows this Honorable Court as follows:

---

[1] Plaintiff's Motion to Dismiss, filed on February 27, 2004, would be dispositive, therefore Plaintiff respectfully requests ruling thereon prior to consideration of Defendant's Motions for Summary Judgment. Plaintiff's Motion-to-Exceed the 25 page limit and Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment on the Basis of Judicial Estoppel are filed concurrently herewith.

# TABLE OF CONTENTS

I.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
     SHOULD BE DENIED BECAUSE A REASONABLE JURY
     WOULD FIND THAT PLAINTIFF HAS A PROTECTABLE
     INTEREST IN THE LIVING LEGEND
     MARK......................................................1

     A.    A REASONABLE JURY WOULD FIND THAT PLAINTIFF'S
           MARK IS SUGGESTIVE AND THEREFORE CAPABLE OF
           TRADEMARK
           PROTECTION........................................4

     B.    A REASONABLE JURY WOULD FIND THAT, EVEN IF
           PLAINTIFF'S MARK WERE NOT SUGGESTIVE, PLAINTIFF'S
           MARK IS AT LEAST DESCRIPTIVE, NOT GENERIC,
           AND HAS ACQUIRED SECONDARY
           MEANING...........................................8

           1.  Plaintiff's Mark
               THE LIVING LEGEND Is At Least Descriptive..........9

           2.  Plaintiff's Mark THE LIVING LEGEND is
               Not Generic...................................10

           3.  Plaintiff's Mark THE LIVING LEGEND Has
               Secondary
               Meaning.......................................13

II.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED
BECAUSE A REASONABLE JURY WOULD FIND THAT
PLAINTIFF IS THE OWNER OF THE LIVING LEGEND MARK............15

III. DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT SHOULD BE DENIED
BECAUSE A REASONABLE JURY WOULD FIND THAT DEFENDANT'S USE IS
NOT PROTECTED BY THE FIRST AMENDMENT NOR FAIR USE
DOCTRINE...................................................17

**IV.**  DEFENDANT'S MOTION  FOR SUMMARY JUDGMENT SHOULD BE
DENIED BECAUSE THERE IS EVIDENCE OF ACTUAL CONFUSION........20


**V.**  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED
BECAUSE DEFENDANT HAS USED A VERY SIMILAR MARK AND PLAINTIFF
HAS SHOWN EVIDENCE OF LIKELIHOOD OF CONFUSION...............23

**VI.**
CONCLUSION...............................................25

## TABLE OF AUTHORITIES

### CASES

*Alliance Metals, Inc. v. Hinely Industries, Inc. et al.*,
222 F.3d 895(11th Cir. 2000) ................................ 20,21


*Aloe Crème Labs., Inc. v. Milsan, Inc.*, 423 F.2d 845, 849,
165 USPQ 37, 41 (5th Cir.), *cert. denied*, 398 U.S. 928, 90
S.Ct. 1818, 26 L.Ed.2d 90, 165 USPQ 609 (1970) ................ 13


*AmBrit, Inc. v. Kraft, Inc.*, 805 F.2d 974, 987-88 (11th
Cir.), *cert. denied*, 481 U.S. 1041, 95 L.Ed.2d 822, 107
S.Ct. 1983 (1986)....................................... ...........21


*Boston Beer Co. L.P.*, 47 USPQ2d 1914 (TTAB 1998), *aff'd* 198
F.3d 1370 (Fed. Cir. 1999) .................................9,10


*Burger King Corp. v. Pilgrim's Pride Corp.*, 705 F.Supp.
1522; 12 USPQ2d 1526 (S.D. Fl. 1988) . ....................11,12,13


*In re Bush Bros. & Co.*, 884 F.2d 569; 12 USPQ2d 1058 (Fed.
Cir. 1989)..................................................... 9


*Celotex Corp. v. Catrett*, 477 U.S. 317,91 L.Ed.2d 265, 106
S.Ct. 2548 (1986)................................................ 2


*Cliff's Notes, Inc. v. Bantam Doubleday Dell Publ. Group,
Inc.*, 886 F.2d 490 (2nd Cir. 1989) ............................ 19


*Community Federal Savings & Loan Assoc. v. Orondorff*, 678
F.2d 1034,(11th Cir. 1982) ..................................... 24

*Conagra, Inc. v. Singleton*, 743 F.2d 1508; 224 USPQ 552; (11th Cir. 1984) ............................................... 14

*Foxworthy v. Custom Tees, Inc. et al.*, 879 F.Supp. 1200, (N.D. Ga. 1995) ................................... 3,6,8,20,21,22

*Freedom Savings & Loan Assn. v. Vernon Way, Jr.*, 757 F.2d 1176; 226 USPQ 123;(11th Cir. 1985) ......................... 23,24

*Frehling Enterprises, Inc. v. Intl. Select Group, Inc.*, 192 F.3d 1330, 1335; USPQ2d 1447;(11th Cir. 1999) ........... 4,9,20,22

*Gift of Learning Foundation, Inc. v. TGC, Inc.*, 2001,U.S. Dist. Lexis 25301 (S.D. Fl. 2001), ....................... 1,4,9,14

*Golden Bear Int'l., Inc. v. Bear USA, Inc.*, 969 F.Supp. 742; 42 USQ2D 1283 (N.D. Ga. 1996) .............................. 3

*Grotrian, Helfferich, Schulz, Th. Steinweg Nahf. v. Steinway & Sons*, 523 F.2d 1331,(2d Cir. 1975) .................. 22

*Harley-Davidson, Inc. v. R. Grottanelli*, 164 F.3d 806; 49 USPQ2D 1458 (2nd Circ. 1999) ................................... 10

*Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, Inc.*, 828 F.Supp. 925; 1993 US.Dist.LEXIS 15250 (M.D. Fl. 1993) ........................................ 6,11

*Investacorp, Inc. v. Arabian Investment Banking Corp.*, 931 F.2d 1519; 19 USPQ2d 1056 (11th Cir. 1991) .............. 4,9,13,14

*Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337; 52 USPQ2d 1094 (2nd Cir. 1999) ....... 2,5,8,11

*Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379;44 USPQ2d 1217 (11th Cir. 1997). ........... 16

*Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, (7th Cir. 1996) ..................................................... 10

*Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc., et al.*, 874 F.2d 95; 10 USPQ2d 1748 (2nd Cir. 1989) ............. 1

*NBA Properties, Inc. et al. v. Dahonega Mint, Inc. et al.*, 41 F.Supp.2d 1341; 48 USPQ2d 1927 (N.D. Ga. 1998) .............. 17

*Original Appalachian Artworks, Inc. v. Topps Chewing Gum*, 642 F.Supp. 1031,(N.D. Ga. 1986) ............................... 23

*Packman v. Chico Tribune Co., et al.*, 267 F.3d 628; 60 USPQ2d 1245 (7th Cir. 2001) .................................... 18

*Popular Bank of Florida v. Banco Popular de Puerto Ricco, et al.*, 9 F.Supp.2d 1347(S.D. Fl. 1998) ..................... 13,21

*Premier-Pabst Corp. v. Elm City Brewing, Co.*, 9 F.Supp 754,(D.Conn. 1935) .......................................... 3,14

*Rogers v. Alberto Grimaldi, et al.*, 875 F.2d 994 10 USPQ2d 1825 (2nd Cir. 1988) .......................................... 19

*Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160; 216 USPQ 599 (11th Cir. 1982) ....................... 22

*Scientific-Atlanta, Inc. v. Jeffrey G. Fenley, et al.*, 1997 U.S.Dist.LEXIS 22700,(N.D. Ga. 1997) ..................... 12,15,23

*Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178; 207 USPQ 278,(5th Cir. 1980), ............................................ 9

*Sunamerica Corp., et al. v. Sun Life Assurance Co. of Canada, et al.*, 77 F.3d 1325; 38 USPQ2d 1065 (11th Cir. 1996 ) ............................................. 16

*Telecomm Tech. Serv., Inc. et al. v. Siemens Rolm Comm., Inc.*, 66 F.Supp.2d 1306,(N.D. Ga. 1998)) ....................... 22

*Titan Sports, Inc. v. James Hellwig*,1999 U.S. Dist. LEXIS 10523(D. Conn. 1999)) .......................................... 7

*Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*,2003 U.S. Dist. LEXIS 8788(N.D. Ga. 2003)) ............... 23

*United We Stand America, Inc. v. United We Stand, et al.,*
128 F.3d 86; 44 USPQ2d 1351 (2nd Cir. 1997) .................. 1,19

*Vision Center v. Opticks, Inc.,* 596 F.2d 111,(5th Cir.
1979),...................................................... 6,11

*Wendy's Int'l. v. Big Bite, Inc.,* 576 F.Supp. 816, (S.D.
Ohio 1983) ................................................... 20

*World Championship Wrestling v. Titan Sports, Inc.,* 46
F.Supp.2d 118 ............................................... 20

*World Wrestling Federation Entertainment, Inc. v. Big Dog
Holdings, Inc.,* 280 F.Supp.2d 413(W.D. Pa.  2003) ............. 7

STATUTES
15 USC § 1052(f) .............................................. 14
15 USC § 1127 ................................................. 20
37 CFR § 2.61(a) ............................................... 1

**I.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE A REASONABLE JURY WOULD FIND THAT PLAINTIFF HAS A PROTECTIBLE INTEREST IN THE LIVING LEGEND MARK**

Although "registration of a trademark is not a prerequisite to an action under the Lanham Act," *Gift of Learning Foundation, Inc. v. TGC, Inc.*, 2001 U.S.Dist.LEXIS 25301, **16 (S.D. Fl. 2001), *aff'd.* (11th Cir. 2003), and because an "owner's right to bar infringing use does not depend on registration prior to the infringer's use," *United We Stand America, Inc. v. United We Stand, et al.*, 128 F.3d 86, 93; 44 USPQ2d 1351 (2nd Cir. 1997), Plaintiff has applied for federal registration of his service mark THE LIVING LEGEND for "Entertainment services, namely, performances by a wrestler/entertainer, personal appearances, wrestling exhibitions, sports entertainment and wrestling commentary." *See* Copy of Plaintiff's Trademark Application and USPTO Approval, Ex. 1.   The Examining Attorney for the USPTO conducted a "complete examination," pursuant to the Official Procedure for Examining Applications, *TMEP* §704.01, and as directed per 37 CFR §2.61(a), and determined the mark to be entitled to registration.  Ex. 1.  "[T]he decision of the PTO … is to be accorded great weight," *Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc., et al.*, 874 F.2d 95, 101; 10 USPQ2d 1748 (2nd Cir. 1989), and "the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party." *Scientific-Atlanta, Inc. v.*

1

*Jeffrey G. Fenley, et al.*, 1997 U.S.Dist.LEXIS 22700, \*\*9 (N.D. Ga. 1997). Thus, because Plaintiff's protectable interest in his mark THE LIVING LEGEND, as used to represent his services, has been officially acknowledged by the USPTO, there exists, at a minimum, a genuine issue of material fact. "A fact is material when it is identified as such by the controlling substantive law. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant." *Id.* at \*\*10 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 248-250, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986)). Viewing the approval of the USPTO in a light most favorable to Plaintiff, and according appropriate weight thereto, a reasonable jury would find Plaintiff to have a protectible interest; thus, summary judgment would be inappropriate.

The formal finding regarding Plaintiff's protectible interest in the words THE LIVING LEGEND as a service mark supports his exclusive use "to identify and distinguish the services of [Plaintiff] from the services of another, and to indicate the source of those services." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344; 52 USPQ2d 1094 (2nd Cir. 1999)(*citing* 15 USC § 1127). It is undisputed that Plaintiff has been known as THE LIVING LEGEND for over twenty years.[2]   *See* Ex. 2-6. "[O]nce plaintiff hit upon the

---

[2] Deposition of Michael Tenay ("Tenay Depo.") at 25:2-26:20, 28:7-13, and 52:11-16, Ex. 2 (testifying that Plaintiff began using THE LIVING LEGEND in the early 1980's and continued wrestling under the name through the 1980's, 1990's and into 2000's; Deposition of Bruno Sammartino ("Sammartino Depo.") at 96:2-11, Ex. 3; Deposition of Vince McMahon, Jr. ("McMahon Depo.") at 57:11-14, Ex. 4; Deposition of Terry

right combination of words, that phrase became his 'hook' or 'catch phrase' by which he became known," *Jeff Foxworthy v. Custom Tees, Inc., et al.*, 879 F.Supp. 1200, 1210 (N.D. Ga. 1995), and "a man who had come to be identified by the public for specific goods [or services] through some specific association is entitled to the exclusive use of such means of identification." *Premier-Pabst Corp. v. Elm City Brewing, Co.*, 9 F.Supp 754, 758 (D.Conn. 1935). This Court has previously recognized such a right in a "hook or catch phrase" by considering that "plaintiff is in fact known in the public by that phrase" and that "plaintiff's career began its rapid ascent only after he began using the phrase in conjunction with his [performances]." *Foxworthy*, 879 F.Supp. at 1209 (*finding the phrase YOU MIGHT BE A REDNECK a protectible service mark "when used in connection with Plaintiff's entertainment services" and thus "entitled to protection from confusingly similar phrases used in similar contexts."*); *see also, Golden Bear Int'l., Inc. v. Bear USA, Inc.*, 969 F.Supp. 742, 744; 42 USPQ2D 1283 (N.D. Ga. 1996)(*"The use of the words "Golden Bear" suggest Jack Nicklaus to those familiar with golf or sports."*) Plaintiff is known in the wrestling public by the phrase THE LIVING LEGEND,[3] and Plaintiff's career ascended after

---

Taylor ("Taylor Depo.") at 25:9-26:8 and 67:9-11, Ex. 5; Deposition of Scott Hudson ("Hudson Depo.") at 32:19-34:24, Ex. 6.

[3] see Hudson Depo. at 85:9-20, and 86:14-17 (testifying that Larry Zbyszko comes to mind if he is asked who is THE LIVING LEGEND in the wrestling industry), Ex. 6.; Taylor Depo. at 25:12-16, 62:5-9 (testifying that THE LIVING LEGEND name is associated with Plaintiff), 71:20-72:2 (testifying that Larry Zbyszko is well-known as THE LIVING LEGEND), and 75:3-7 (testifying that based upon his 24 years

he began using the phrase in conjunction with his wrestling performances. *See* Sammartino Depo. at 98:13-14, 99:1-2, and 118:18-21 (*"he was a hot item...received tremendous publicity"*), Ex. 3. Thus, summary judgment should be denied because a reasonable jury would find Plaintiff has a protectible interest in THE LIVING LEGEND mark.

### A. A REASONABLE JURY WOULD FIND THAT PLAINTIFF'S MARK IS SUGGESTIVE AND THEREFORE CAPABLE OF TRADEMARK PROTECTION

Plaintiff's mark, THE LIVING LEGEND, suggests that his performances are renowned, however, it does not describe what his services are. Plaintiff's mark is clearly suggestive because "[s]uggestive terms suggest characteristics of the...services and require an effort of the imagination by the consumer in order to be understood as descriptive" of the service. *Frehling Enterprises, Inc. v. Int'l. Select Group, Inc.*, 192 F.3d 1330, 1335; 52 USPQ2d 1447 (11th Cir. 1999); *also, Investacorp, Inc. v. Arabian Investment*

experience in the business, he thinks that THE LIVING LEGEND moniker was made famous by Plaintiff and that WWE was trying to use it to elevate Jericho), Ex. 5; Tenay Depo. at 52:14-16 (testifying THE LIVING LEGEND is synonymous with Plaintiff), Ex. 2; Numerous Publications confirming Plaintiff's widespread popularity as THE LIVING LEGEND, *see* "Wrestling 'Legend' Vows to Maul Former Fighter," Unreferenced Magazine, Ex. 7; "The Wrestler Presents," Wrestling True Life Stories, 1988, Ex. 8; "'LIVING LEGEND' speaks, latest news on WRESTLEMANIA," The Flagship, p. D4, March 7, 2002, Ex. 9; The Wrestler, May, 1998, Ex. 10; "If LIVING LEGEND Wrestles Hulkster Animosity Will Dictate the Outcome," The Trentonian Sports, p. S21, January 5, 2003, Ex. 11; "Zbyszko Shoot Tape Full of Insights," Slam Pro Wrestling, 11/1/2001, Ex. 12; "LIVING LEGEND Larry Zbyszko," Wrestling AllStars, Vol. 5, Ex. 13; "The New LIVING LEGEND," Sports North Newspaper, Vol. 9, No. 20, Ex. 14; Interview from THEINTERACTIVEINTERVIEW.COM, 3/30/2003, Ex. 15; and "The Legend," Song Recording performed by The Baby Boomer Band, Ex. 16.

*Banking Corp.*, 931 F.2d 1519, 1523; 19 USPQ2d 1056 (11th Cir. 1991); *and*, *Gift of Learning*, 2001 U.S.Dist.LEXIS at **17.  It is undisputed that promotion of professional wrestlers involves strategically seeking to develop a recognizable identity, via monikers/character names/stage names, costumes, storylines, etc.  Suggestive marks, like Plaintiff's, are successfully popular.  *See* Affidavit of Sandra M. Sovinski and Attachments (including examples, such as THE BIG BOSS MAN, THE HANDSOME STRANGER, THE BROOKLYN STUD, and THE MACHINE.)

Defendant WWE has "a whole legal process which [they] go through before [character] names are approved," McMahon Depo. at 28:9-11, Ex. 4, confirming the importance of the selections by even seeking CEO input on what character name a talent might use.  McMahon Depo. at 29:16-19, Ex. 4.  In fact, contrary to Defendant's position in the present action with reference to protectability of Plaintiff's mark, Defendant is the owner of numerous marks that would be classified, at best, as suggestive.  *See* Ex. 17.  SUPERHERO IN TRAINING, THE LEGACY, THE HURRICANE, DISCIPLINARIAN, ULTIMATE WARRIOR, THE OUTSIDERS, and MR. PERFECT are but a handful of the registered and/or pending service marks owned by Defendant and used in conjunction with performances by a wrestler/entertainer.

"The classification of a mark is a factual question.  The factual issue presented is how the purchasing public views the mark...the fact-finder's function is to determine, based on the evidence before it, what the perception of the purchasing public is."

*Lane Cap. Mgmt.,* 192 F.3d at 344.   "The plain fact is that plaintiff has become known by this phrase [THE LIVING LEGEND].   That he is known by his [wrestling] as well does nothing to limit the fact that he is also known by the phrase."   *Foxworthy,* 879 F.Supp. at 1211. *See* Ex. 7-Ex. 16.   It is in recognition of this identity and perception of the purchasing public that THE LIVING LEGEND and Larry Zbyszko are one and the same, coupled with the goodwill value thereof, that Plaintiff has continued to purposefully identify himself as THE LIVING LEGEND.

"Another [classification] test...is whether competitors in the same industry would be likely to need the mark to describe their products or services." *Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, Inc.,* 828 F.Supp. 925 (M.D. Fl. 1993)(*quoting Vision Center v. Opticks, Inc.,* 596 F.2d 111, 116 (5th Cir. 1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980)). Competitors are not likely to need Plaintiff's mark; Plaintiff's mark is suggestive, not generic.   Defendant's infringement of Plaintiff's mark did not result from need.   Defendant now admits that Plaintiff's mark was purposefully used to refer to Chris Jericho "as part of the storyline development of his fictional character," *Def. Mem.Supp.Summ.J. at 1:4-6,* although previous sworn testimony repeatedly denied such use[4].   *See also* Ex. 62-Ex. 73   (evidence in

---

[4] This admission directly contradicts sworn testimony by Vince McMahon.   "Living Legend is not a story line.   Living Legend was a description of Chris Jericho…"

support of Defendants wrongful use of Plaintiffs mark). Plaintiff's mark THE LIVING LEGEND is no more necessary for use by wrestling competitors than are Defendant's marks ULTIMATE WARRIOR, WARRIOR, THE LEGACY and SUPERHERO IN TRAINING. Defendant asks this Court to prevent Plaintiff from enforcing his right to his suggestive service mark, despite routinely relying on other Courts to do just the opposite, that is, to enforce exclusive rights in Defendant's own suggestive marks used to identify wrestling performers, *see Titan Sports, Inc. v. James Hellwig*, 1999 U.S.Dist.LEXIS 10523 (D. Conn. 1999)(*seeking to enforce exclusive rights to WARRIOR and ULTIMATE WARRIOR marks*), and *World Wrestling Federation Entertainment, Inc. v. Big Dog Holdings, Inc.*, 280 F.Supp.2d 413 (W.D. Pa. 2003)(*seeking to enforce such suggestive and descriptive words and phrases as, THE ROCK, KNOW YOUR ROLE, BRAHMA BULL, OPEN UP A CAN OF WHOOP ASS, RATTLESNAKE, and UNDERTAKER*).

In fact, contrary to Defendant's assertions regarding the classification and protectability of Plaintiff's mark, Defendant has previously admitted the importance of "developing popular wrestling characters appearing under unique names," and that "a principal component" of defendant's own business results from use of "characters' names, likenesses, [and] signature phrases..." *Id.*

McMahon Depo. at 48:5-6, Ex. 4. "And it wasn't a story line, because you make sure you can capitalize on it. Larry Zbyszko who is the complainant here, he would have had to be under contract to us for that to have been a story line…" McMahon Depo. at 48:12-16, Ex. 4. "So that wasn't a story line…" McMahon Depo. at 48:21-22, Ex. 4. "Living Legend was not a story line, unless Bruno Sammartino was going to come out of retirement." McMahon Depo. at 49:3-5, Ex. 4.

Plaintiff agrees with Defendant's admission regarding the importance of character development under a unique name and has thus continued to foster his mark, THE LIVING LEGEND.  Further, like Defendant, Plaintiff recognizes the benefit in the characterization connoted by his suggestive mark and relies upon his character name/signature phrase as the principal component of his own business.[5]  "A 'suggestive' mark…' subtly connotes something about the service or product...'" *Foxworthy*, 879 F.Supp. at 1210, n.14.  A reasonable jury would determine that Plaintiff's mark THE LIVING LEGEND subtly connotes something about his wrestling performances and is therefore suggestive.  "Suggestive marks are inherently distinctive, and are to be afforded strong protection." *Id.* at 1212.  Thus, summary judgment should be denied.

### B. A REASONABLE JURY WOULD FIND THAT, EVEN IF PLAINTIFF'S MARK WERE NOT SUGGESTIVE, PLAINTIFF'S MARK IS AT LEAST DESCRIPTIVE, NOT GENERIC, AND HAS ACQUIRED SECONDARY MEANING

"A 'suggestive' mark...does not require a showing of secondary meaning." *Id.* at 1210, n.14.  That is, "[t]he connection between mark and source is assumed in the case of a suggestive or arbitrary term.  Secondary meaning performs the role of establishing that connection...in the case of a descriptive term.  *Lane Cap. Mgmt.*, 192

---

[5] Plaintiff's promotion to build his mark was recognized by Bruno Sammartino.  *See* Sammartino Depo. at 103:21-104:1 and 104:22-105:1, 15, Ex. 3.  ("[H]e claimed himself as THE NEW LIVING LEGEND.  That…continued on…as part of this publicizing himself to keep fresh in mind…;" He "would get great reaction from the fans and then keep the name Zbyszko hot;" "He was promoting himself.")

F.3d at 344.   Plaintiff's suggestive mark THE LIVING LEGEND is synonymous with Plaintiff; as such, the connection between the mark and the source can be assumed.

### 1.   Plaintiff's Mark THE LIVING LEGEND Is At Least Descriptive

"Descriptive marks describe a characteristic or quality of an article or service."  *Frehling*, 192 F.3d at 1335; *see also Gift of Learning*, 2001 U.S.Dist.LEXIS at **17.   Plaintiff's mark, if not suggestive, is at least descriptive of the renowned quality of Plaintiff's performances.   "[T]he distinctiveness categorization given a term is a question of fact."   *Investacorp*, 931 F.2d at 1523 (*citing Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 n.12, 207 USPQ 278, 282 n.12 (5th Cir. 1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816, 210 USPQ 776 (1981).   The fact that Plaintiff's mark suggests a desirable reputation does not impact on registrability, because Plaintiff's mark has secondary meaning and "laudation is not inimical to a term's capability of functioning as trademark."   *In re Bush Bros. & Co.*, 884 F.2d 569; 12 USPQ2d 1058 (Fed. Cir. 1989)(*finding DELUXE capable of serving as a trademark for canned pork and beans, noting that DELUXE does not identify "a recognized grade of canned pork and beans" nor does it signify "anything other than a 'vaguely desirable characteric'"*).   Plaintiff's mark THE LIVING LEGEND is capable of serving as a mark.

9

Like DELUXE for beans, *Id.*, and unlike "The Best Beer in America" for beer, *Boston Beer Co. L.P.*, 47 USPQ2d 1914 (TTAB 1998), *aff'd* 198 F.3d 1370 (Fed. Cir. 1999), THE LIVING LEGEND is not understood by the purchasing public to refer to the genus of professional wrestling; THE LIVING LEGEND is neither the name of the wrestling industry nor about the industry. *Id.* (noting that "*FIRE CHIEF was held not to be generic for a magazine directed to the field of firefighting*" for reasons including that the term sought to be registered was "*neither the name of the ... industry nor about the ... industry*".) Thus, Plaintiff's mark, if not suggestive, is at least descriptive, and is not generic.

### 2.   Plaintiff's Mark THE LIVING LEGEND Is Not Generic

"The distinction between highly descriptive terms and generic names is difficult to state in the abstract. The best that can be done conceptually is to observe that descriptive terms describe a thing, while generic terms name the thing." *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1158 n.9; 37 USPQ2d 1633 (7th Cir. 1996). Other than with reference to his predecessor, Bruno Sammartino, Plaintiff's mark THE LIVING LEGEND was not specifically applied to professional wrestlers prior to Plaintiff's use thereof. Thus, Plaintiff's use is unlike the public's use of the words in the generic sense. *Harley-Davidson, Inc. v. R. Grottanelli*, 164 F.3d

10

806, 812 n.12; 49 USPQ2D 1458 (2nd Circ. 1999)(*recognizing a permissible new, non-generic use of a generic term "to identify a product within a category to which the word has not previously been applied.*") Thus, Plaintiff's mark is not generic.

Another test that supports that Plaintiff's mark is not generic is "the term's meaning to a usual buyer or other relevant members of the public." *Burger King Corp. v. Pilgrim's Pride Corp.*, 705 F.Supp. 1522, 1525; 12 USPQ2d 1526 (S.D. Fl. 1988). Defendant paid a linguistic professor to proffer his opinion regarding the words "living legend." The opinion of "an expert on the English language" does not reflect the meaning to "a usual buyer or relevant members of the public," wherein "[t]he relevant purchasing public is not the population at large, but prospective purchasers of the product." *Lane Cap. Mgmt.*, 192 F.3d at 345. *See* Defendant's Yerkes Report, p. 15.

Although Defendant doubtless has innumerable marketing databases of wrestling fans and relevant members of the public which could have been surveyed for the purpose of assessing the meaning of THE LIVING LEGEND to the relevant members of the public, because the results would have surely been in Plaintiff's favor, Defendant opted to pay a scholar to read dictionaries, Internet searches, and electronic publications. However, a dictionary merely indicates the meaning of the words "to the public." *Ice Cold Auto Air*, 828 F.Supp. 925 (*quoting Vision Center*, 596 F.2d at 116, n.13. Plaintiff does not dispute the meaning of the words "Living Legend" to the public at

11

large, but Plaintiff does dispute the findings presented in Defendant's paid report.

First, contrary to Defendant's assertion, Plaintiff's own inquiry did not identify a single dictionary including the phrase "living legend."[6] Further, the assertion that "just the fact that 'living legend' is an entry in a dictionary confirms that 'living legend' is a generic term" clearly shows the "Expert" opinion has no basis in, nor relevance to, trademark law. Def's.Mem.Supp.Summ.J. at 7:8-9. Surely Defendant realizes that it is not the entry, per se, that is relevant, but instead the application/use of the mark?[7] Fortunately, the Court has a truly relevant expert opinion on which to rely, that of an Examining Attorney at the Trademark Office, finding Plaintiff's mark to be non-generic and registrable. See Ex. 1. Although Defendant would have the Court to accord weight to the paid opinion, if the basis is relevant, Defendant's own marks would be generic.[8]

---

[6] Plaintiff's inquiry included: Webster's New Twentieth Century Dictionary of the English Language Unabridged, Second Edition, 1977; New Lexicon Webster's Dictionary of the English Language, Encyclopedic Edition, 1988; American Heritage Dictionary of the English Language, Third Edition, 1992; www.mirriamwebster.com online dictionary; and www.dictionary.com online dictionary, as referenced in Affidavit and Attachments, Ex. 18.

[7] Examples of famous marks that can be found to have unrelated dictionary entries include the following: APPLE (computers) and DELTA (airlines), as referenced in Affidavit and Attachments, Ex. 19.

[8] Dictionary listings found for Defendant's marks LEGACY, DISCIPLINARIAN, BULLY, OUTSIDERS. Results of GOOGLE search for Defendant's marks dwarfed the results for Plaintiff's mark: LEGACY = 9,650,000/+wrestle = 23,500; THE NEXT BIG THING = 9,300,000/+wrestle = 110,000; HURRICANE = 3,680,000/+wrestle = 14,200; ULTIMATE WARRIOR = 711,000/+wrestle ≈ 12,520; MR. PERFECT = 4,080,000/+wrestle ≈ 42,400, as referenced in Affidavit and Attachments, Ex. 20.

The court in *Burger King* found CHICKEN TENDERS to be non-generic, reasoning that "although there [is] evidence of third party use, most of the third party use [is]...*not in the same market*...and thus could not be considered a use of the mark." *Burger King*, 705 F.Supp. at 1530.

Further, almost all, if not all, of the third party use was not a trademark use. Defendant's "Expert" did not address, and perhaps is unaware of, these trademark law distinctions. The facts support that THE LIVING LEGEND, as used by Plaintiff as a service mark for his entertainment services as a professional wrestler, would be found to be non-generic by a reasonable juror.

### 3. Plaintiff's Mark THE LIVING LEGEND Has Secondary Meaning

"[T]he existence of a secondary meaning is a question of fact." *Investacorp*, 931 F.2d at 1524 (*citing Aloe Crème Labs., Inc. v. Milsan, Inc.*, 423 F.2d 845, 849, 165 USPQ 37, 41 (5th Cir.), *cert. denied*, 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90, 165 USPQ 609 (1970). The rule of this Circuit is that "[s]econdary meaning exists if a substantial number of existing or prospective customers understand the designation when used in connection with a business to refer to a particular person or enterprise." *Popular Bank of Florida v. Banco Popular de Puerto Ricco, et al.*, 9 F.Supp.2d 1347, 1357 (S.D. Fl. 1998); *see also Investacorp*, 931 F.2d at 1525 ("*Secondary*

13

*meaning is the connection in the consumer's mind between the mark and the provider of the service.*")   It is undisputed that a substantial number of customers understand THE LIVING LEGEND, when used in connection with wrestling, to refer to Plaintiff.   *See* Ex. 2-Ex.16. Thus, a reasonable jury would find Plaintiff's mark to have secondary meaning.

Defendant would have the Court misled by disparaging Plaintiff's success and by touting a lack of advertising.   However, "the issue is the *achievement* of an identity and not the effort expended in the attempted achievement.    Nor is success in stimulating sales necessarily decisive."   *Premier-Pabst*, 9 F.Supp at 760.   "Absent *consumer survey* evidence...four factors can be considered in determining whether a particular mark has acquired a secondary meaning:   (1) The length and manner of its use; (2) the nature and extent of *advertising and promotion*; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's business; and (4) the extent to which the public actually identifies the name with the plaintiff's service."   *Investacorp,* 931 F.2d at 1525 (*citing Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513, 224 USPQ 552, 555 (11th Cir. 1984); *also Gift of Learning*, 2001 U.S.Dist.LEXIS at **25.   Plaintiff has been using THE LIVING LEGEND mark as a service mark for over twenty years.   The *Lanham Act* provides a "presumption that proof of substantially exclusive and continuous use *over five years is*

14

indicative of secondary meaning." *Id*. at **23 (*referring to* 15 U.S.C. § 1052(f)). Thus, the first factor clearly favors Plaintiff. Any and all of Plaintiff's promotions have made use of THE LIVING LEGEND mark. *See* Ex. 21-Ex. 56 (numerous promotional materials). While financial limitations have inhibited Plaintiff's ability to extensively advertise, the nature of his advertising and promotion is certainly supportive of a secondary meaning. Plaintiff consistently refers to himself as THE LIVING LEGEND in an ongoing effort to promote and maintain the conscious connection in the public's mind between the name and Plaintiff's business. Further, evidence shows that the public does identify THE LIVING LEGEND with Plaintiff's wrestling services. *See* Ex. 2-Ex. 16. Considering the support of a finding of secondary meaning found in each of the factors, especially when viewing "all evidence and factual inferences in a light most favorable to" Plaintiff, summary judgment should be denied. *Scientific-Atlanta*, 1997 U.S.Dist.LEXIS at **9.

## II. **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE A REASONABLE JURY WOULD FIND THAT PLAINTIFF IS THE OWNER OF THE LIVING LEGEND MARK**

Contrary to Defendant's claim to the first use of the mark in connection with wrestling entertainment services, according to Bruno Sammartino, the magazines, newspapers and fans "first came out with calling me a LIVING LEGEND." Sammartino Depo. at 56:6-10 and 85:21-

15

23, Ex. 3.   Further, any right Defendant may have had to THE LIVING LEGEND mark was admittedly given to Plaintiff.   Vince McMahon, Jr. admitted that the mark "was...given by my dad to Larry Zbyszko...;" Plaintiff began using the LIVING LEGEND mark "at Dad's behest." McMahon Depo. at 33:13-14 and 53:12-14, Ex. 4.   Thus, Plaintiff is the owner of THE LIVING LEGEND mark.

Even if Defendant had, and retained, some *right* to THE LIVING LEGEND, Defendant clearly acquiesced to Plaintiff's use thereof. "Acquiescence is an equitable defense that denotes active consent by a senior user to another use of the mark." *Sunamerica Corp., et al. v. Sun Life Assurance Co. of Canada, et al.,* 77 F.3d 1325, 1334; 38 USPQ2d 1065 (11th Cir. 1996).   The rule in this Circuit is that "the existence of acquiescence creates a legal duty on the part of the senior user to respect the junior user's mark and to avoid creating confusion with it."   *Id.*   Defendant was admittedly aware when Plaintiff began using THE LIVING LEGEND mark, McMahon Depo. at 57:7-10, Ex. 4, and knew that Plaintiff continued to use the mark thereafter.   McMahon Depo. at 57:14, Ex. 4.   Thus, because Defendant acquiesced to Plaintiff's use of THE LIVING LEGEND mark, Defendant has a legal duty to avoid creating confusion with it.

Nevertheless, any interest Defendant may have ever had has clearly been abandoned.   *Success in a claim of priority* "is contingent upon the resolution of...attacks concerning... abandonment."   *Lone Star Steakhouse & Saloon, Inc. v. Longhorn*

*Steaks, Inc.*, 122 F.3d 1379, 1382; 1997 U.S.App.LEXIS 26388; 44 USPQ2d 1217 (11th Cir. 1997).   "[A]ctual and continuous use is required to acquire and retain a protectible interest in a mark." *NBA Properties, Inc. et al. v. Dahlonega Mint, Inc. et al.*, 41 F.Supp.2d 1341, 1346, n.3; 48 USPQ2d 1927 (N.D. Ga. 1998).   Defendant has not made actual and continuous use of THE LIVING LEGEND as a trademark.   The only evidence Defendant provided shows extremely sporadic and non-continuous use.

## III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE A REASONABLE JURY WOULD FIND THAT DEFENDANT'S USE IS NOT PROTECTED BY THE FIRST AMENDMENT NOR FAIR USE DOCTRINE

Despite previously testifying to the contrary[9], Defendant now admits the purposeful and repeated use of Plaintiff's mark to refer to Chris Jericho "as part of the storyline development of his fictional character."  Def's.Mem.Supp.Summ.J. at 1:4-6.   Defendant's assertions that the use "was a non-trademark use" and that the mark is unprotectable are also contradicted.[10]   Moreover and ironically, Defendants have created a genuine issue of material fact by now contradicting the clear and unambiguous admissions against interest

---

[9] This admission directly contradicts sworn testimony by Vince McMahon.  "Living Legend is not a story line.  Living Legend was a description of Chris Jericho…" McMahon Depo. at 48:5-6, Ex. 4.  "And it wasn't a story line, because you make sure you can capitalize on it.  Larry Zbyszko who is the complainant here, he would have had to be under contract to us for that to have been a story line…"  McMahon Depo. at 48:12-16, Ex. 4.  "So that wasn't a story line…"  McMahon Depo. at 48:21-22, Ex. 4.  "Living Legend was not a story line, unless Bruno Sammartino was going to come out of retirement."  McMahon Depo. at 49:3-5, Ex. 4.
[10] The phrase LIVING LEGEND "was one of the phrases he was using."  "Larger than Life is the one he's using now."  McMahon Depo. at 53:9-10, 25, Ex. 4.

made in their letter dated February, 15, 2002.  *See* Def. Affidavit of Edward L. Kaufman and Ex. 57.   More specifically, in said letter Defendants admit that THE LIVING LEGEND is a protectable mark and that they had been using, and would continue to use, the mark THE LIVING LEGEND for similar goods and services as Plaintiff.   And now, in said Affidavit, Defendants attempt to controvert, thereby creating a genuine issue of material fact and making summary judgment improper.

"To prevail on the fair use defense, defendants must show that" (1) they used [the mark] in a non-trademark use; (2) the phrase is descriptive of their goods or services; and (3) they used the phrase 'fairly and in good faith' only to describe their goods and services." *Diana Packman v. Chico Tribune Co., et al.*, 267 F.3d 628, 639; 60 USPQ2d 1245 (7th Cir. 2001).  A genuine issue of material fact exists as to whether the Defendants use was a trademark use.   As Jericho is not a "living legend" by definition, his use could not have been descriptive.  *See* Tenay Depo. at 67:18-25, Ex. 2.   The third factor, good faith, moreover, clearly favors Plaintiff.   "The defendant's good faith can be judged only by inquiry into their subjective purpose in use the slogan."  *Id.* at 642.   Defendant has admitted that use of THE LIVING LEGEND to refer to Chris Jericho was intended to assist in the development of an identifiable character. Def's.Mem.Supp.Summ.J. at 1:4-6.   First Amendment protection does "not apply to misleading titles that are confusingly similar to other

18

titles." *Ginger Rogers v. Alberto Grimaldi, et al.*, 875 F.2d 994, 999, n.5; 10 USPQ2d 1825 (2nd Cir. 1988). Good faith cannot be found where development of a character title is based upon use of a mark already identifiable with another.

"[T]rademark protection is not lost simply because the allegedly infringing use is in connection with a work of artistic expression." *Cliff's Notes, Inc. v. Bantam Doubleday Dell Publ. Group, Inc.*, 886 F.2d 490; 12 USPQ2d 1289 (2nd Cir. 1989). Defendant's use of Plaintiff's mark is distinguished from each of the cases cited because Defendant "is using the Mark not as commentary on its owner, but instead … in connection with 'services'." *United We Stand*, 128 F.3d at 92. First Amendment protection is provided for "an expressive purpose such as commentary, comedy, parody, news reporting or criticism…" *Id.* at 93. Defendant is using THE LIVING LEGEND as a mark for commercial purpose. "To allow [Defendant] to use [Plaintiff]'s Mark would not only cause confusion, but would permit it to 'appropriate to itself the harvest of those who have sown." *Id.* Summary judgment should be denied because Defendant's use of Plaintiff's mark is neither protected by the First Amendment nor fair use doctrine.

**IV.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THERE IS EVIDENCE OF ACTUAL CONFUSION**

"Where it is shown that the alleged infringer used the mark knowingly and with the intention of deriving some benefit from it, a strong inference of probable confusion arises, and all doubt are resolved against defendant." *World Championship Wrestling v. Titan Sports, Inc.*, 46 F.Supp.2d 118, 125 (*citing Wendy's Int'l. v. Big Bite, Inc.*, 576 F.Supp. 816, 822 (S.D. Ohio 1983)(*finding "that the likelihood of confusion was higher in cases of direct competition."*) The *record* is clear that Defendant used THE LIVING LEGEND mark with the intention of deriving benefit, development of a popular storyline.  Further, although Defendant asserts WWE's services are not similar to Plaintiff's services, "[f]or our Court, the test was not whether the goods could be distinguished,...but whether the goods are so related in the minds of the consumers that they get the sense that a single producer is likely to put out both goods." *Frehling*, 192 F.3d at 1338.  Thus, because Plaintiff and Defendant's services are so related, and in fact are in direct competition, there is a strong inference of probable confusion.

"[E]vidence of actual confusion is not required although it is especially important when it does exist." *Foxworthy*, 879 F.Supp. at 1214; *see also, Alliance Metals, Inc. v. Hinely Industries, Inc. et al.*, 222 F.3d 895, 907 (11th Cir. 2000)( "The most persuasive evidence

in assessing the likelihood of confusion is proof of actual confusion.")   Plaintiff has introduced evidence of actual confusion. *See* Deposition of Stacey Steele ("Steele Depo.") at 8:6-9:6 and 10:2-8, Ex.58 and Ex. 59 (showing actual confusion of wrestling fans that Jericho is THE LIVING LEGEND).

Defendant has tried to discount Plaintiff's evidence by referring to a clarification of the confusion upon listening to the commercial again.   However, this Court has recognized that "'Confusion should be measured based on an initial understanding rather than an understanding that may develop after careful reading of the material.'"   *Id.* Further, Defendant has tried to discount Plaintiff's evidence because only one actual incident was proven, when in fact, "[n]o absolute measure exists as to how many instances of actual confusion are sufficient to establish this factor." *Popular Bank*, 9 F.Supp.2d at 1360.   This Court has previously held that production of "at least one instance of actual confusion" favors Plaintiff.   *Foxworthy*, 879 F.Supp. at 1217 ("*[I]t takes little evidence to establish existence of the actual confusion factor. Moreover that there were only a few reported instances of actual confusion does not mean that only those individuals were actually confused.*")(*quoting AmBrit, Inc. v. Kraft, Inc.*, 805 F.2d 974, 987-88 (11th Cir.), *cert. denied*, 481 U.S. 1041, 95 L.Ed.2d 822, 107 S.Ct. 1983 (1986).

Thus, "[a]lthough the number of instances is small, the [person] confused [is] precisely...whose confusion is most significant..." *Safeway*, 675 F.2d at 1167. That is, "it is not the number of people actually confused by the marks that is important, but rather the type of person confused." *Frehling*, 192 F.3d at 1341. Mr. Steele is certainly very familiar with Plaintiff and his wrestling enterprise. *See* Ex. 58. Further, "the mere fact that [his] suspicions were aroused because of the association indicates confusion on a legally cognizable level." *Foxworthy*, 879 F.Supp. at 1215 (*citing Grotrian, Helfferich, Schulz, Th. Steinweg Nahf. v. Steinway & Sons*, 523 F.2d 1331, 1342 (2d Cir. 1975)("*even though customers may know the difference between the products, the public may subliminally associate the names, thereby causing confusion*"). Thus, because the confusion of someone is relevant evidence of actual confusion, and because the reported association "indicates confusion on a legally cognizable level," Plaintiff's evidence should be deemed "at least sufficient to raise an inference of actual confusion...," *Frehling*, 192 F.3d at 1341, and Summary Judgment should be denied. *Telecomm Tech. Serv., Inc. et al. v. Siemens Rolm Comm., Inc.*, 66 F.Supp.2d 1306, 1327 (N.D. Ga. 1998)(*finding summary judgment not appropriate in trademark dispute where the use of the mark at issue was not disputed, but instead it was argued that the "practices are not likely to cause confusion among consumers. However, 'likelihood of confusion is a factual matter,' and the Court cannot conclude, on the*

record before it, that no reasonable jury could find that a likelihood of confusion exists.").

**V.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DEFENDANT HAS USED A VERY SIMILAR MARK AND PLAINTIFF HAS SHOWN EVIDENCE OF LIKELIHOOD OF CONFUSION**

"[T]he test under Georgia law for whether a claim of unfair competition will succeed is whether defendant has created a likelihood of confusion as to the source of sponsorship of a product." *Scientific-Atlanta*, 1997 U.S.Dist.LEXIS at **22. Further, "[u]nder the Georgia statute, a plaintiff need only prove a likelihood of dilution, rather than actual dilution." *Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*, 2003 U.S.Dist.LEXIS 8788, **109, n.11 (N.D. Ga. 2003)(*citing Original Appalachian Artworks, Inc. v. Topps Chewing Gum*, 642 F.Supp. 1031, 1039-40 (N.D. Ga. 1986). "Dilution, like unfair competition, is a broader claim than infringement...Dilution requires some proof that the use of a trademark decreases its commercial value.  If the plaintiff holds a distinctive trademark, it is enough that the defendant has made significant use of a very similar mark." *Freedom Savings & Loan Assn. v. Vernon Way, Jr.*, 757 F.2d 1176, 1186; 226 USPQ 123 (11th Cir. 1985)(*referring to Community Federal Savings & Loan Assoc. v. Orondorff*, 678 F.2d 1034, 1035 (11th Cir. 1982).  Because Plaintiff has shown actual confusion, *ergo*, likelihood of confusion, and

because Defendant has undisputedly made significant use of a very similar if not exact mark, a reasonable jury would find in Plaintiff's favor regarding claims of unfair competition and dilution. "[T]he unfair competition claim is a 'broader' one that requires the court to examine conduct by the defendant that would not be dispositive of an infringement claim." *Freedom Savings*, 757 F.2d at 1186. Thus, Summary judgment should not be granted.

## VI.  CONCLUSION

Plaintiff has shown that a reasonable jury would, *or* at least could, find that (1) Plaintiff has a protectible interest in THE LIVING LEGEND mark, (2) Plaintiff' mark is suggestive, (3) if Plaintiff's mark is not suggestive, Plaintiff's mark is at least descriptive, not generic, *and has acquired* secondary meaning, (4) Plaintiff is the owner of THE LIVING LEGEND mark, (5) Defendant's use of Plaintiff' mark is not protected by the First Amendment nor fair use doctrine, (6) actual confusion has occurred, (7) Defendant has used *a very* similar mark, and (8) confusion is likely. Therefore, for all the foregoing reasons herein, *Defendants motion for summary judgment should be denied.*

Plaintiff believes oral arguments are not necessary and would be an unwarranted *burden on the* Court's time. However, if it pleases the

Court to entertain oral arguments, Plaintiff will fully and respectfully comply with such a request.

Dated:  March 1, 2004

Respectfully submitted,

_____
Joel D. Myers
Georgia Bar No. 533147
Counsel for Plaintiff

Myers & Kaplan, L.L.C.,
1899 Powers Ferry Road
Suite 310
Atlanta, Georgia 30339
Phone: 770-541-7444
Fax: 770-541-7448
Email: jmyers@mkiplaw.com

## **CERTIFICATION**

Pursuant to Local Rule 7.1D, counsel for Plaintiff hereby certifies that this Response has been prepared with Courier New Font (12 point).

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

LARRY WHISTLER                    )
a/k/a LARRY ZBYSZKO               )
a/k/a THE LIVING LEGEND,          )
an individual,                    )
                                  )
          Plaintiff,              )
                                  )     Civil Action
                                  )     No. 1 02-CV-1008
     v.                           )
                                  )
WORLD WRESTLING FEDERATION        )
ENTERTAINMENT, INC., a Delaware   )
Corporation,                      )
                                  )
          Defendant.              )
_____

CERTIFICATE OF SERVICE

     A copy of the **PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TRADEMARK-RELATED ISSUES** was served by U.S. First Class Mail upon the
following:

                    John L. Taylor, Jr.
                    Chorey, Taylor & Feil
                    The Lenox Building
                    Suite 1700
                    3399 Peachtree Road, NE
                    Atlanta, GA 30326
                    Tel. (404) 841-3200
                    Fax  (404) 841-3221

This ___1st___ day of March, 2004.

Joel D. Myers
Georgia Bar No. 533,147
Myers & Kaplan,
Intellectual Property Law, LLC
1899 Powers Ferry Road
Suite 310
Atlanta, GA 30339
Tel. (770) 541-7444
Fax  (770) 541-7448

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 1 - 2004

LUTHER D. THOMAS, Clerk
By: _J. Pinckney_
Deputy Clerk

LARRY WHISTLER                    )
a/k/a LARRY ZBYSZKO               )
a/k/a THE LIVING LEGEND,          )
an individual,                    )
                                  )
          Plaintiff,              )
                                  )    Civil Action
                                  )    No. 1-02-CV-1008 - CC
     v.                           )
                                  )
WORLD WRESTLING FEDERATION        )
ENTERTAINMENT, INC., a Delaware   )
Corporation,                      )
                                  )
          Defendant.              )
─────────────────────────────────

## STATEMENT OF DISPUTED MATERIAL FACTS BY PLAINTIFF

COMES NOW Larry Whistler a/k/a Larry Zbyszko a/k/a The
Living Legend (hereinafter "Plaintiff Zbyszko"), by and
through his attorney, Joel D. Myers, Myers & Kaplan,
Intellectual Property Law, L.L.C., hereby, pursuant to Local
Rule 56.1(B), files this Statement of Disputed Material Facts
by Plaintiff, as follows:

51

1.   Whether WWE admitted that they had been using the phrase "LIVING LEGEND" as a trademark in its February 15, 2002 letter addressed to Larry Whistler.

2.   Whether WWE admitted that said trademark was protectable and that they intended to register said trademark in its February 15, 2002 letter addressed to Larry Whistler.

3.   Whether Plaintiff's more than 20 years of use of his mark has acquired him secondary meaning.

4.   Whether Plaintiff's use of his mark has been continuous.

5.   Whether Bruno Sammartino's use of the mark had been abandoned.

6.   Whether Bruno Sammartino promoted himself as the "LIVING LEGEND"

7.   Whether WWE promoted Bruno Sammartino as the LIVING LEGEND in sufficiently to acquire trademark rights.

8.   Whether Plaintiff's mark, THE LIVING LEGEND, is suggestive.

9.   Whether Plaintiff's mark, THE LIVING LEGEND, is descriptive.

10.  Whether Plaintiff's mark, THE LIVING LEGEND, is generic.

11.  Whether Bruno Sammartino was in fact by definition a LIVING LEGEND and any use by him, or by others on his behalf, could not have acquired trademark rights.

12.  Whether WWE's use was willful or at least in reckless disregard to Plaintiff's rights.

13.  Whether Plaintiff's inadvertent omission on the bankruptcy filing was intended to make a mockery of the Judicial System.

14.  Whether Plaintiff had knowledge that there was an error on his bankruptcy filing.

15.  Whether Mr. Steele's confusion as to the radio ad on 96 Rock constitutes confusion.

16.  Whether Plaintiff's inconsistencies in regards to the bankruptcy filing were calculated.

17.  Whether the purchasing public (wrestling fans) associates the mark THE LIVING LEGEND with Larry Whistler.

18.  Whether WWE owns any rights to the mark THE LIVING LEGEND.

19.  Whether WWE's prior admitted knowledge and complete reckless disregard to Plaintiff's rights justify the award of WWE's profits during said period of use coupled with attorneys' fees and costs.

Respectfully submitted this ___ day of March, 2004.

By: _____
Joel D. Myers
Georgia Bar No. 533147
Counselor for Plaintiff


Myers & Kaplan, LLC,
1899 Powers Ferry Road
Suite 310
Atlanta, Georgia 30339
Phone: 770-541-7444
Fax: 770-541-7448
Email: jmyers@mkiplaw.com

## **CERTIFICATION**

Pursuant to Local Rule 7.1D, counsel for Plaintiff hereby certifies that this Memorandum has been prepared with Courier New Font (12 point).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| LARRY WHISTLER<br>a/k/a LARRY ZBYSZKO<br>a/k/a THE LIVING LEGEND,<br>an individual,<br><br>     Plaintiff,<br><br>   v.<br><br>WORLD WRESTLING FEDERATION<br>ENTERTAINMENT, INC., a Delaware<br>Corporation,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action<br>)  No. 1-02-CV-1008<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

A copy of the STATEMENT OF DISPUTED MATERIAL FACTS BY PLAINTIFF was served by U.S. First Class Mail upon the following:

> John L. Taylor, Jr.
> Chorey, Taylor & Feil
> The Lenox Building
> Suite 1700
> 3399 Peachtree Road, NE
> Atlanta, GA 30326
> Tel. (404) 841-3200
> Fax (404) 841-3221

This 18 day of March, 2004.

Joel D. Myers
Georgia Bar No. 533,147
Myers & Kaplan,
Intellectual Property Law, L.L.C.
1899 Powers Ferry Road
Suite 310
Atlanta, GA 30339
Tel. (770) 541-7444
Fax  (770) 541-7448

6