**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 1 5 2004

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LARRY WHISTLER ) | |
| a/k/a LARRY ZBYSZKO ) | |
| a/k/a THE LIVING LEGEND, ) | |
| an individual, ) | |
| ) | Civil Action No. 1 02-CV-1008-CC |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| WORLD WRESTLING ) | |
| ENTERTAINMENT, INC., a Delaware ) | |
| corporation, ) | |
| ) | |
| Defendant. ) | |

## WORLD WRESTLING ENTERTAINMENT INC.'S REPLY BRIEF TO PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT 'S MOTION FOR SUMMARY JUDGMENT ON TRADEMARK-RELATED ISSUES

World Wrestling Entertainment, Inc. ("WWE") files this Reply Brief to Plaintiff Larry Whistler's ("Whistler") response and memorandum of law in opposition to WWE's motion for summary judgment (the "Opposition").

### INTRODUCTION

Whistler's Opposition is most significant for what it does not dispute and indeed flat-out concedes from WWE's Memorandum of Law in Support of Motion for Summary Judgment On Trademark-Related Issues:



- Whistler has not come forward with any evidence to dispute the expert opinion of Professor David Yerkes that "living legend" is a generic term, which is a ubiquitous cliché in the English language.

- Whistler admits that the public at large understands the generic term "living legend" according to the dictionary definition cited by Professor Yerkes of "a famous person who is still alive."

- Whistler does not dispute or contradict WWE's overwhelming evidence that the term "living legend" has been applied to hundreds of figures in sports and entertainment, including, specifically over 120 wrestlers other than Whistler.

- Whistler does not dispute the modern trend among the TTAB and Federal Courts that laudatory terms and phrases are so highly descriptive that they are incapable of gaining trademark protection.

- Whistler concedes that WWE identified Bruno Sammartino as "The Living Legend" years before Whistler claims he first used the mark.

- Whistler does not dispute WWE's evidence of its extensive and continuous use of "The Living Legend" in connection with wrestling goods and services through today.

- Whistler does not contest that the trademark of WWE's fictional character, Chris Jericho, is "Chris Jericho," and that "living legend" was one of many descriptive phrases, including, "larger than life" and "king of the world," used by "Chris Jericho" in the context of WWE's fictitious storyline.

In addition to the foregoing explicit and implicit admissions, which in and of themselves warrant entry of WWE's Motion for Summary Judgment, Whistler's Opposition otherwise strains to create the appearance of disputed issues of fact where none actually exists. The factual record of this case is undisputed. Whistler

appears to confuse the parties' disputed legal positions—which now have been briefed for the Court's adjudication pursuant to WWE's Motion for Summary Judgment—with genuine disputes of material fact, of which there are none.[1]  In particular, despite Whistler's claim that the classification or distinctiveness categorization of a mark is a question of fact, the Eleventh Circuit has specifically affirmed the grant of summary judgment to a defendant based upon the lack of distinctiveness of the mark at issue where—as here—no material facts were in dispute. *Investacorp, Inc. v. Arabian Investment Banking Corp.*, 931 F.2d 1519, 1524 (11th Cir. 1991).

Overall, Whistler bears the burden of responding to WWE's Motion for Summary Judgment by coming forward with specific, affirmative evidence to oppose WWE's claims, which he has markedly failed to do. *Scientific-Atlanta Inc. v. Fenley*, No. Civ. 1:95CV1584-JEC, 1997 WL 33543688, at *3 (N.D. Ga. Jan. 14, 1997), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As such, WWE is entitled to summary judgment as a matter of law.

---

[1]  For instance, Whistler erroneously claims the Affidavit submitted by Edward L. Kaufman in support of WWE's Motion for Summary Judgment somehow creates a genuine issue of material fact. That is absurd. Mr. Kaufman's affidavit testimony is undisputed and uncontrovered. It undisputedly explains Mr. Kaufman's understanding of the facts and circumstances surrounding his sending the February 15, 2002 letter at issue to Whistler. Just because Whistler would want that understanding to have been different, does not create a disputed issue of fact where Mr. Kaufman's testimony is the only evidence in the record on that issue and it stands uncontroverted.

## A.   USPTO's Decision On Whistler's Trademark Application Is Of No Significance In This Action

Whistler's Opposition places great significance in the administrative decision of one trademark examiner at the United States Patent and Trademark Office ("USPTO") allowing his trademark application to be published for opposition to supposedly create a disputed issue as to the protectibility of his purported "Living Legend" mark.   This alleged significance is fundamentally unwarranted.

In fact, the Eleventh Circuit previously rejected the identical argument in *Investacorp.*   In that case, as here, the plaintiff relied on the "inaction of the Patent and Trademark Office to inject an issue of fact into the district court's determination of distinctiveness." *Investacorp,* 931 F.2d at 1524.   Since "the PTO passed the mark on to publication," and "a finding of descriptiveness is one of the grounds for refusal of registration," the plaintiff argued the mark at issue must be protectible; otherwise the PTO would not have passed the mark on to publication. *Id.*   In categorically rejecting that argument, the Eleventh Circuit found that—as here—there was no recorded finding by the PTO that the mark was protectible. *Id.* "Consequently, all this Court can do is guess at what the PTO's determinations were while evaluating the merit of" the mark. . . .   [W]e will not defer to an ethereal determination that is not affirmatively stated by the [PTO]." *Id.*

4

Accordingly, "withstanding the implications" argued by the plaintiff, the Eleventh Circuit ruled that the PTO decision to pass on the mark for publication "involved no genuine issue of fact." As noted above, the Eleventh Circuit went on to affirm the grant of summary judgment to the defendants based upon the lack of distinctiveness of the mark. *Investacorp* is controlling here. The fact that the PTO passed on Whistler's trademark application to be published for opposition, without comment or basis, does not create a genuine issue of fact as to the distinctiveness or protectibility of "living legend" as a mark.

Whistler thus mischaracterizes the nature and legal effect of what has occurred before the USPTO. As the Eleventh Circuit found in *Investacorp*, the USPTO has made no substantive rulings with respect to Whistler's alleged "Living Legend" mark.[2]  Whistler also misrepresents the alleged weight afforded to determinations of the USPTO. The Second Circuit case he cites for the proposition that USPTO decisions supposedly are to be accorded great weight, in reality

---

[2]  Irrespective of the examining attorney's administrative decision to allow the application to be published for opposition, USPTO regulations provide opportunity for any other party to object to the application's registration by instituting an opposition so that the matter may be adjudicated before the TTAB. 37 C.F.R. § 2.101. WWE indeed has instituted an opposition to oppose the registration of Whistler's mark on the basis that, among other reasons. "The Living Legend" is generic and unprotectible as a matter of law. WWE's Opposition to Whistler's Trademark Application attached hereto as Tab A. Those opposition proceedings have been suspended pending an outcome in this litigation. TTAB's Suspension Order attached hereto as Tab B. The Court may take judicial notice of documents filed with the Patent and Trademark Office. *See Vitek Systems, Inc. v. Abbot Laboratories*, 675 F.2d 190. 192 FN. 4 (8th Cir. 1982); *Davis v. Williams Communications, Inc.*, 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003).

involved substantive ruling of the USPTO's judicial body, the Trademark Trial and Appeal Board ("TTAB")—which did not occur here—as opposed to the mere administrative function of a single, initial trademark examiner which did occur. *See Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc. et. al.*, 874 F.2d 95, 98 (2nd Cir. 1989). Whistler inexplicably, and we submit deceptively, fails to note this profound distinction to the Court. Accordingly, Whistler has failed to identify any authority that the initial decision of an individual trademark examiner is to be afforded any weight, let alone the great weight Whistler inaccurately references in his Opposition.

In any event, irrespective of the Second Circuit opinion cited by Whistler, the Eleventh Circuit has specifically found courts in this Circuit are not bound by prior USPTO decisions in civil litigation regarding the same trademark dispute. *Investacorp*, 931 F.2d at 1524; *Freedom Savings and Loan Assoc. v. Way*, 757 F.2d 1176, 1180 (11th Cir. 1985). Significantly, in fact, the Eleventh Circuit in *Freedom Savings and Loan* affirmed the trial court's ruling for the defendant and granted the defendant's counterclaim, despite the TTAB's prior ruling regarding the same trademark dispute for the plaintiff. *Id.* Specifically, the Eleventh Circuit found that the TTAB failed to make findings on such important factors considered in this Circuit as the type of the mark and the evidence of actual confusion. *Id.* at 1182-

1186. Because the dispositive factors considered or not considered by the USPTO often vary from those articulated by the Eleventh Circuit, USPTO should have no substantive significance here.

Another reason why the decisions and determinations of the USPTO have no conclusive authority is because the USPTO may take inconsistent positions, particularly when the determination is made by a single examining attorney—as was the case here—as opposed to a decision of the entire TTAB.  To pertinently demonstrate that inconsistency, the USPTO specifically has found "living legend" to be an unprotectable term in the context of a prior trademark application.  In discovery, Whistler produced to WWE the USPTO file for the trademark application for "Living Legend Wrestlers."  Trademark Application No. 75-629752 for Living Legend Wrestlers attached hereto as Tab C.  In rejecting the mark for registration as being too descriptive, the USPTO expressly found,

> The term LIVING LEGENDS is frequently used to describe famous living individuals with regard to a particular field.  In addition to the evidence previously provided [excerpted articles from the examining attorneys' search in which the term LIVING in relation to LEGEND appeared in 13,486 stories], the examining attorney refers to the excerpted article from a search in the LEXIS/NEXIS computerized database in which the term LIVING LEGEND in relation to WRESTLER appeared in 6 articles. . . .  The term LIVING LEGEND is a common, recognized term.

Final Office Action attached hereto as Tab D.

7

In point of fact, therefore, the USPTO actually has made WWE's very argument as to why the term "living legend" is incapable of trademark protection.

## B. Whistler Has Failed To Come Forward With Any Competent Evidence Of Secondary Meaning

In his Opposition, Whistler baldly claims, "[i]t is undisputed that a substantial number of customers understand "The Living Legend," when used in connection to wrestling, to refer to Plaintiff." Opposition at 14. Not only is this statement specifically disputed by WWE but, in reality, there is no evidence that any wrestling fans understand "The Living Legend" to refer to Whistler. As the alleged basis for his unsubstantiated pronouncement, Whistler cites Exhibits 2-16 to his Opposition, which contain a handful of magazine and newspaper articles over the course of Whistler's career.

As an initial matter, each of the referenced Exhibits specifically identify Whistler's real trademark, Larry Zbyszko, in association with any reference to the term "living legend." Moreover, as described more fully in WWE's Trademark Brief, the referenced Exhibits inconsistently refer to Whistler by numerous different terms, including, "Legend," "The New Living Legend," and "Wrestling's Living Legend." Whistler Depo. at 150:10-15; 151:11-160:18, Ex. 2. Thus, to the extent the referenced Exhibits are evidence of anything they establish that Whistler was randomly referred to by a number of different terms, and never consistently or

exclusively known as "The Living Legend," as he now claims.  In any event, none of these Exhibits reflect "consumer perception," nor does Whistler submit any evidence to suggest how many consumers supposedly read any of these magazines or newspapers such as circulation numbers, sales figures, etc.  Furthermore, Whistler notably has come forward with no consumer survey or expert opinion regarding consumer recognition as purported evidence of secondary meaning.

Significantly, "the Eleventh Circuit has held that a plaintiff has the burden of sustaining a high degree of proof establishing secondary meaning for a descriptive term." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 800 (11th Cir. 2003).  Courts also have ruled "that the greater the degree of descriptiveness a term or expression has, the more proof is required to establish acquired distinctiveness." *Boston Beer*, 47 U.S.P.Q.2d at 1921, *citing In re Packaging Specialists, Inc.*, 221 USPQ 917 (TTAB 1984).  "This requisite high degree of proof must be considered by the court when ruling on a motion for summary judgment." *Investacorp*, 931 F.2d at 1525.

As set forth in Professor Yerkes Expert Report, the term "living legend" is pervasively used—in over 135,000 hits using a Google Internet search and in 11,562 articles based on a search of the "US Newspapers and Wires" Nexis database—to identify hundreds of figures in sports and entertainment, including

more than 120 wrestlers.    Yerkes Report at ¶ 11-16.    In contrast to such overwhelming, undisputed evidence, Whistler has identified a handful of articles. Undoubtedly, such flimsy and sparse evidence is insufficient as evidence of consumer recognition—let alone the high degree of proof mandated by the Eleventh Circuit and other courts—to create a question of fact on whether his alleged "The Living Legend" mark has acquired secondary meaning as a unique identifier of Whistler's purported services.

Whistler's attempt to show secondary meaning based on the four factor test applied in this Circuit in the absence of consumer survey evidence is equally unavailing.  Under these factors, the court may consider the plaintiff's (1) length and manner of use; (2) nature and extent of advertising and promotion; (3) effort made to promote a conscious connection in the public's mind; and (4) extent to which the public actually recognizes "The Living Legend" with plaintiff's services.

With no evidence of actual public recognition under the fourth factor, and an acknowledgement at the outset that he does no advertising of his purported mark, Whistler largely relies on the alleged presumption under the Lanham Act that proof of substantially exclusive and continuous use over five years is indicative of secondary meaning.    Whistler borrows this so-called "presumption" from the USPTO's rules of practice.    Importantly, however, there is no five-year

presumption of secondary meaning in a civil trademark action.  In fact, this Court specifically has not adopted a five-year presumption to establish secondary meaning. *Kohler Co. v. Titon, Industries, Inc.*, No. Civ.A. 1:97CV428RWS, 1999 WL 1043221, at *5 (N.D. Ga. March 26, 1999).  In rejecting the plaintiff's claim of secondary meaning based on almost twenty years of use, this Court looked to actual evidence of consumer recognition—which is sorely lacking here—in finding "there is an absence of empirical evidence which proves Plaintiff's efforts successful and an absence of evidence that the consumer identifies the trade dress of the Wellworth with any particular product." *Kohler*, 1999 WL 1043221, at *5.

Moreover, even assuming *arguendo* the five-year presumption were applicable in this Court, it could not apply to Whistler's alleged use of "The Living Legend."  As Whistler acknowledges, the USPTO's rules of practice require that the proof of use be "substantially exclusive and continuous."  At no time since Whistler claims to have begun using "The Living Legend" mark has his use been substantially exclusive.  As described in detail in WWE's Trademark Brief, WWE has continuously identified Bruno Sammartino as "The Living Legend" since the late-1960's or early-1970's through the present, including in connection with the myriad goods and services identified in WWE's Trademark Brief.  In the absence of "substantially exclusive use," Whistler cannot avail himself of the Lanham

Act's five-year presumption under any circumstances.

**C.    WWE's Evidence Of Its Own Prior And Continuous Use Of "Living Legend" To Identify Bruno Sammartino Is Undisputed**

As noted above and as described in detail in its Trademark Brief, WWE has identified Bruno Sammartino as "The Living Legend" since the late 1960s or early 1970s. McMahon Depo. at 33:3-7, Ex. 6. Sammartino Depo. at 54:14-55:6, Ex. 4. Significantly, Whistler does not dispute WWE's prior use and ownership of the mark. Yet contrary to Whistler's specious claims, to the extent "living legend" is found to be a protectible mark, WWE has never abandoned or assigned its prior right to use "the living legend."

In his Opposition, Whistler for the first time makes the absurd argument that WWE gave whatever rights it may have had to "The Living Legend" mark to Whistler. On the one hand, Whistler's argument reflects the significant concession that WWE was the prior user and owner of "The Living Legend" mark (to the extent it is found to be protectible as a trademark). On the other hand, Whistler's claim fundamentally distorts and mischaracterizes Vince McMahon's deposition testimony. Indeed, Mr. McMahon's plain meaning is evident from a full quotation, without ellipsis, of his testimony:

> First of all, it was not my idea for him [Chris Jericho] to use "living legend" because that was something that my dad in promoting Bruno Sammartino asked Bruno to start using. We started calling Bruno The

> Living Legend.   Subsequent to that, we did what's known as a
> program with Larry Zbyszko, who allegedly was from Pittsburgh and
> allegedly trained with Bruno, and it was a pupil/student battle-type
> thing.   So then Larry started using "living legend" of course at my
> dad's behest, as well.

McMahon Depo. at 33:3-14, Ex. 6.

> It ["living legend"] was a trite expression that had been used and
> given by my dad to Bruno Sammartino, and given by my dad to Larry
> Zbyszko to create interest in the Zybszko-Sammartino matchup . . . .

McMahon Depo. at 53:11-15 attached hereto as Tab E.

Clearly, Mr. McMahon never referred in his deposition testimony to a legal

transaction by which WWE assigned its putative rights to "The Living Legend"

trademark to Whistler, but rather to Whistler being allowed or directed to refer to

himself as "The Living Legend" in connection with and to create interest in the

Sammartino-Zbyszko storyline promoted by WWE.   Furthermore, as described in

detail in WWE's Trademark Brief, the evidence is undisputed that WWE

continuously and extensively used "The Living Legend" to identify Bruno

Sammartino in connection with goods and services subsequent to the Sammartino-

Zbyszko storyline in 1980 and through today.   WWE could not have done this if it

had "assigned" its rights to Whistler, as he absurdly claims.   Even if WWE had

"assigned" such rights to Whistler, since Whistler has failed to contest WWE's

continuous and extensive use of "The Living Legend" to identify Bruno

13

Sammartino, Whistler would have acquiesced to WWE's use of the mark and would be precluded from asserting his claims against WWE in this action.

Whistler separately argues in his Opposition that, to the extent "Living Legend" is found to be protectible as a trademark, WWE has somehow lost its rights under the doctrine of acquiescence. Whistler's argument turns the doctrine of acquiescence on its head. Acquiescence is an affirmative defense that estops a senior user from bringing claims against a party for use of the mark to which the senior user has consented. *Sun America Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996). Here, WWE has not asserted any affirmative claims against Whistler and thus the defense of acquiescence is inapplicable.

Even if acquiescence were found to somehow apply in this context, which it should not, "[t]rademark law is unmistakably clear that a laches or acquiescence defense does not divest the trademark owner of the right to use the mark but may deprive him or her of any remedy for infringing uses by others." *TMT North Am., Inc. v. Magic Touch*, 124 F.3d 876, 885 (7th Cir. 1997)(citations omitted). WWE— as the putative owner of "Living Legend" through its identification of Bruno Sammartino—thus cannot lose any of its accrued rights in the mark. Since WWE has continuously and extensively used "The Living Legend" to identify Bruno

Sammartino in connection with wrestling products and wrestling services through today, it continues to own rights in the mark unless and until those rights are abandoned.

**D.      Whistler Has Categorically Misrepresented WWE's Testimony**

In multiple places in his Opposition, Whistler inaccurately claims that WWE's position in its Trademark Brief that any use of "living legend" to refer to Chris Jericho was a non-trademark use "as part of the storyline development of his fictional character" is somehow inconsistent with prior deposition testimony.   The apparent basis for Whistler's confusion is a misconstrued passage from Mr. McMahon's deposition:

> [a] story line in our business is no different than a storyline in a soap
> opera or drama.   Same thing.   Come up with a concept, involves
> characters ... If I can go in and cut to the chase and help you out here,
> Living Legend is not a storyline.   Living Legend was a description of
> Chris Jericho, in my view, in his own words who he thought he was as
> a character; one of the many that he used.

McMahon Depo. at 46:16-48:8, Tab E.   Contrary to Whistler's distortion, Mr. McMahon's response is wholly consistent with WWE's Trademark Brief.   Mr. McMahon explicitly stated that "living legend" was one of many descriptions used by Chris Jericho in the WWE storyline.   Mr. McMahon disagreed with the notion that "living legend" was a storyline in and of itself, akin to its use in the Sammartino-Zbyszko feud years ago, or the proposed storyline for which Whistler

15

attempted to induce WWE to hire him.  However, Mr. McMahon never claimed that the term "living legend" was not used in a storyline.  Indeed, to the contrary, he explicitly testified that Chris Jericho used it in the storyline to describe himself.

**E.     Whistler's Discussion of WWE's Trademarks Is Irrelevant**

In another distraction from the actual legal issues in dispute, Whistler devotes considerable space in his Opposition to WWE's use of trademarks wholly unrelated to his litigation.  Whatever WWE may or may not do with respect to the protection and enforcement of its own intellectual property is not at issue in this case and has no relevance here whatsoever.

For all the foregoing reasons, and the reasons set forth in WWE's Trademark Brief, WWE's Motion for Summary Judgment should be granted in its entirety and Whistler's claims in this action should be dismissed with prejudice.

Respectfully submitted,

_____
Attorneys for Defendant
World Wrestling Entertainment, Inc.

John L. Taylor, Jr.
Georgia Bar No. 700400
Celeste McCollough
Georgia Bar No. 487013

**CHOREY, TAYLOR & FEIL, P.C.**
The Lenox Building, Suite 1700
3399 Peachtree Road, N.E.
Atlanta, Georgia 30326
Telephone: (404) 841-3200
Facsimile: (404) 841-3221

and

Jerry S. McDevitt
Curtis B. Krasik
Julie R. Fenstermaker
**KIRKPATRICK & LOCKHART LLP**
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501

## CERTIFICATION

Pursuant to Local Rule 7.1D, counsel for Defendant hereby certify that this document has been prepared with Times New Roman font (14 point).



# EXHIBIT / ATTACHMENT

## A

(To be scanned in place of tab)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In re:               Application of Larry Whistler, aka Larry Zbyszko
Serial No.:          76/377,193
Mark:                THE LIVING LEGEND
Class:               41
Filed:               March 1, 2002
Published:           October 1, 2002, *Official Gazette*

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC. | ) ) ) ) ) |
| Opposer | ) ) ) |
| v. | ) ) |
| LARRY WHISTLER, AKA LARRY ZBYSZKO | ) ) ) |
| Applicant. | ) ) |

Opposition No. _____

Box: TTAB/FEE
Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3513

"Express Mail" Mailing Label Number:  __ET793312594US__
Date of Deposit:  __November 27, 2002__
I hereby certify that this paper or fee is being deposited with the United States Postal Service
"Express Mail Post Office to Addressee" service under 37 C.F.R. § 1.10 on the date indicated above
and is addressed to Commissioner for Trademarks, 2900 Crystal Drive, Arlington, VA 22202-3513.

*Patty Mack*
Patty Mack

## TRANSMITTAL OF NOTICE OF OPPOSITION

In accordance with 37 C.F.R. § 2.104, please find enclosed an original and duplicate copy of a Notice of Opposition filed on behalf of World Wrestling Entertainment, Inc., a Delaware corporation having its principal place of business at 1241 East Main St., Stamford, Connecticut 06902, to the above-referenced pending trademark application for registration of the phrase, "The Living Legend."

The requisite fee in the amount of three hundred dollars ($300.00) required in 37 C.F.R. § 2.6(17) is enclosed herewith. The Commissioner is hereby authorized to charge any additional fee or credit any overpayment to Deposit Account 11-1110.

Any questions and any correspondence relating to the subject Notice of Opposition should be directed to the undersigned.

Respectfully submitted,

Jerry S. McDevitt, Esquire
Curtis B. Krasik, Esquire
David Schramm, Esquire
Julie R. Fenstermaker, Esquire
Kirkpatrick & Lockhart LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501

Attorneys for Opposer
World Wrestling Entertainment, Inc.

Dated: November 27, 2002

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| In re: | Application of Larry Whistler, aka Larry Zbyszko |
| Serial No.: | 76/377,193 |
| Mark: | THE LIVING LEGEND |
| Class: | 41 |
| Filed: | March 1, 2002 |
| Published: | October 1, 2002, *Official Gazette* |

WORLD WRESTLING ENTERTAINMENT,           )
INC.                                                                            )
                                                                                     )
                                                                                     )
                                                                                     )
                                                                                     )          Opposition No. _____
                            Opposer                                   )
                                                                                     )
                  v.                                                           )
                                                                                     )
LARRY WHISTLER, AKA LARRY                        )
ZBYSZKO                                                               )
                                                                                     )
                            Applicant.                                 )
                                                                                     )

Box: TTAB/FEE
Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3513

## NOTICE OF OPPOSITION

World Wrestling Entertainment, Inc. ("Opposer") is a Delaware corporation

with its principal place of business at 1241 East Main St., Stamford, Connecticut 06902.

Opposer believes that it will be personally damaged by registration of the phrase, "The

Living Legend," which is the subject of Application Serial No. 76/377,193 filed by Larry

Whistler, aka Larry Zbyszko ("Applicant").  Opposer hereby opposes registration of the

phrase and requests that registration to Applicant be refused.

As grounds in support of the Opposition, Opposer asserts the following:

## I.   Introduction

1.     Applicant has filed a trademark application to register the phrase, "The Living Legend" for entertainment services, namely performances by a wrestler/entertainer, personal appearances, wrestling exhibitions, sports entertainment and wrestling commentary in International Class 41.

2.     Opposer World Wrestling Entertainment, Inc. is and continuously has been in the business of providing sports entertainment services in the form of wrestling exhibitions featuring various wrestling talent performing as characters to live and television audiences across the country for over twenty years.

3.     Opposer's business is of a related nature to the services alleged by Applicant in his application. Opposer has a valid and legal right to use the phrase sought to be registered by Applicant in the promotion and performance of its business. In addition, as described more fully below, to the extent that any protection is afforded to this phrase, Opposer is entitled to claim certain rights in the phrase that pre-date those of the Applicant.

## II.   The Phrase "The Living Legend" Cannot Qualify For Registration Because It Is Generic Or At Most, Is Merely Descriptive

4.     The phrase "The Living Legend," when used on or in connection with any form of entertainment services, is generic.

5.     In the alternative, the phrase "The Living Legend" is at least merely descriptive within the meaning of Section 2(e)(1) of the Lanham Act.

6.     The words "The Living Legend" are a common self-laudatory phrase routinely used by entertainers to describe their services in wrestling and various

other segments of the entertainment industry and the phrase is therefore incapable of registration under Section 2(e)(1) of the Lanham Act.

**III.    The Application Must Be Refused Because The Phrase, "The Living Legend" Fails To Distinctively Identify Applicant's Services**

7.    There are numerous instances of third party uses of the phrase, "The Living Legend" to describe legions of entertainers, including many entertainers providing wrestling entertainment services.  Consequently, the mere use of the phrase, "The Living Legend" fails to distinctively identify Applicant.

8.    Among the many third-party uses of the phrase, "The Living Legend" is that of Bruno Sammartino, another wrestling performer who has been using the phrase, "The Living Legend" since the 1960s. Mr. Sammartino's use of the phrase, "The Living Legend" predates Applicant's alleged use by over 15 years.

9.    Although, as set forth herein, Opposer contends the phrase, "The Living Legend" is generic and/or descriptive, to the extent that any protection is given, Opposer has certain rights in "The Living Legend" phrase by way of a contract with Mr. Sammartino.

10.    As such, Applicant's use of "The Living Legend" fails to establish the requisite level of distinctiveness required under Section 2(f) and must be refused registration.

**IV.    Applicant Has Committed Fraud By Claiming That He Is The Exclusive Owner Of The Phrase, "The Living Legend"**

11.    Since Applicant is not the owner of "The Living Legend" phrase for the reasons set forth herein, the application also should be refused because Applicant

committed fraud when, under penalty of perjury, he claimed that he was the owner of the phrase, "The Living Legend" in the application.

12.     Applicant further committed fraud in his application when he claimed exclusive rights in the phrase.

13.     As such, the application should be denied registration under Section 1(a)(3) of the Lanham Act.

14.     Applicant at all relevant times has been personally aware of Mr. Sammartino's prior use of the phrase, "The Living Legend."

15.     Applicant's personal knowledge of Mr. Sammartino's prior use of the phrase, "The Living Legend" afforded Applicant notice that other entertainers, including other wrestling performers, were previously using the phrase, "The Living Legend" to indicate sports entertainment services.

16.     Applicant thus had actual knowledge of prior use of the phrase, "The Living Legend" at the time he signed the declaration claiming he had exclusive rights to the phrase.  As such, Applicant is attempting to register this phrase in bad faith and has committed a fraud upon the Patent and Trademark Office under Section 1(a)(3) of the Lanham Act.  The application, therefore, should be refused.

**V.     The Application Should Be Refused Because The Specimen Submitted With The Phrase Is Defective**

17.     The application should be refused because the specimen submitted with the application for the phrase, "The Living Legend" is defective and fails to show the phrase as actually used in the sale or advertising of entertainment services in the nature of personal appearances, wrestling exhibitions and commentary as required by 37 C.F.R. § 2.56(b)(2).

4

**VI.    Conclusion**

18.    In view of the above, Opposer is likely to be damaged by registration of the phrase, "The Living Legend" in that, among other things, the prima facie effect of such registration will tend to impair Opposer's right to use the phrase in connection with its own wrestling entertainment services.

WHEREFORE, Opposer prays that Application Serial No. 76/377,193 be rejected and that registration of the phrase, "The Living Legend" for the services specified therein be denied and refused.

Respectfully submitted,

Jerry S. McDevitt, Esquire
Curtis B. Krasik, Esquire
David Schramm, Esquire
Julie R. Fenstermaker, Esquire

Kirkpatrick & Lockhart LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501

Attorneys for Opposer,
World Wrestling Entertainment, Inc.

Dated:  November 27, 2002

## CERTIFICATE OF OPPOSER'S ATTORNEY

We hereby certify that we are the representatives and attorneys for World Wrestling Entertainment, Inc., Opposer herein, and that we have been instructed to file the foregoing Opposition.  We are therefore filing this Opposition under 15 U.S.C. § 1063 and 37 C.F.R. § 2.101.

Respectfully submitted,

Jerry S. McDevitt
Curtis B. Krasik
David Schramm
Julie R. Fenstermaker

Kirkpatrick & Lockhart LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501

Attorneys for Opposer
World Wrestling Entertainment, Inc.

Dated:  November 27, 2002



# EXHIBIT / ATTACHMENT

_____ B _____

(To be scanned in place of tab)

RECEIVED

APR 1 4 2003

KIRKPATRICK & LOCKHART LLP

UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
*Trademark Trial and Appeal Board*
2900 Crystal Drive
Arlington, Virginia 22202-3513

PWC/rr

Mailed:  April 9, 2003

Opposition No. **91-154,350**

WORLD WRESTLING
ENTERTAIMENT, INC.

v.

WHISTLER, LARRY

**Peter Cataldo, Interlocutory Attorney**

The motion (filed March 11, 2003) to suspend the
proceeding pending final determination of a civil action
between the parties is hereby granted as conceded.  *See*
Trademark Rules 2.127(a) and 2.117(a).

Accordingly, proceedings are **suspended** pending final
disposition of the civil action between the parties.

Within twenty days after the final determination of
the civil action, the interested party should notify the
Board so that this case may be called up for appropriate
action.  During the suspension period the Board should be
notified of any address changes for the parties or their
attorneys.





# EXHIBIT / ATTACHMENT

C

(To be scanned in place of tab)

File No. 61-503

### INTENT TO USE
### APPLICATION FOR REGISTRATION

Mark        :  LIVING LEGEND WRESTLERS
Int'l. Classes  :  16, 25, 28, 35 and 41

Assistant Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3513

S I R :

FRED MAY, an individual U.S. citizen, having a principal place of business at

4747 N.W. 103rd Avenue, Suite 12, Sunrise, Florida 33351.

The above-identified applicant has a bona fide intention to adopt and use the mark shown in

the accompanying drawing for:

> PRINTED MATERIALS, NAMELY, COLLECTOR CARDS,
> BUMPER STICKERS, STICKERS, POSTERS, PROGRAMS,
> PHOTOGRAPHS, AND PRINTS, in International Class 16;

> WEARING APPAREL, NAMELY, HATS, SHIRTS, SHORTS,
> BOXER SHORTS, GLOVES, BANDANNAS, HANDKERCHIEFS,
> BELTS, SOCKS, SWEAT PANTS, JACKETS AND COSTUMES,
> in International Class 25;

> TOYS AND GAMES, NAMELY, PLUSH AND BEAN TOYS, TOY
> ACTION FIGURES, DIE CAST AND PLASTIC CARS AND
> TRUCKS, VIDEO GAMES, BOARD GAMES, PINBALL GAMES,
> INFLATABLE TOYS, IN LINE SKATES, SKATEBOARDS AND
> DIE CAST FIGURES, in International Class 28;

> PROMOTING SPORTING EVENTS OF OTHERS; SPORT
> FIGURE LICENSING SERVICES; PROMOTING THE GOODS
> AND SERVICES OF OTHERS THROUGH THE DISTRIBUTION
> OF PRINTED MATERIALS AND CONTESTS, in International
> Class 35; and

> ENTERTAINMENT SERVICES IN THE NATURE OF
> PERSONAL APPEARANCES BY SPORTS FIGURES;
> ENTERTAINMENT SERVICES, NAMELY, SPORTS
> EXHIBITIONS AND RELATED EVENTS; FAN CLUBS; AND
> MOTION PICTURE FILM, VIDEO AND WEB SITE
> PRODUCTION, in International Class 41,

and requests that said mark be registered in the United States Patent and Trademark Office on the

Principal Register established by the Act of July 5, 1946.

ZBYSZKO
00246

Applicant has a bona fide intention to use the mark in commerce on or in connection with the above-identified goods by printing it on the packaging, labels and containers for the goods, and in other ways customary to the trade, and in association with the services by printing it in advertising or promotional materials, and in other ways customary to the trade.

### POWER OF ATTORNEY

Applicant hereby appoints Kevin G. Smith, Jody H. Drake and Charles W. Fallow, Reg. No. 28,946, of SHOEMAKER AND MATTARE, LTD., Suite 1203 Crystal Plaza Bldg. 1, 2001 Jefferson Davis Highway, Arlington, VA  22202-0286, Telephone No. (703) 415-0810, attorneys at law, to prosecute this application to register, to transact all business in the Patent and Trademark Office in connection therewith, and to receive the Certificate of Registration.

### PAYMENT OF FILING FEE

A check in the amount of $1225 is enclosed for the Government Filing Fee.  If this amount is insufficient, or if the check becomes disassociated from this filing, please charge any deficiencies in the fee to Deposit Account No. 19-2110.

### DECLARATION

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he is properly authorized to execute this application on behalf of the applicant; he believes applicant to be entitled to use such mark in commerce; to the best of his knowledge and belief, no other person, firm, corporation or association has the right to use the above-identified mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods and/or services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his own knowledge are true and all statements made on information and belief are believed to be true.

FRED MAY

By: _____

an individual U.S. citizen

Date: _____1/26/99_____

-2-

ZBYSZKO
00247

File No. 61-503

FRED MAY
an individual U.S. citizen

Business Address:

4747 N.W. 103rd Avenue, Suite 12
Sunrise, Florida 33351.

Intent to Use



TRADEMARK FEE PROCESS.
RECEIVED

1999 JAN 27 P 2: 20

US PATENT &
TRADEMARK OFFICE

INT CLASS

| 14 | 25 |
| 28 | 35 | 41 | 46 |

For: PRINTED MATERIALS, NAMELY, COLLECTOR CARDS, BUMPER STICKERS, STICKERS, POSTERS, PROGRAMS, PHOTOGRAPHS AND PRINTS, in International Class 16;

WEARING APPAREL, NAMELY, HATS, SHIRTS, SHORTS, BOXER SHORTS, GLOVES, BANDANNAS, HANDKERCHIEFS, BELTS, SOCKS, SWEAT PANTS, JACKETS AND COSTUMES, in International Class 25;

TOYS AND GAMES, NAMELY, PLUSH AND BEAN TOYS, TOY ACTION FIGURES, DIE CAST AND PLASTIC CARS AND TRUCKS, VIDEO GAMES, BOARD GAMES, PINBALL GAMES, INFLATABLE TOYS, IN LINE SKATES, SKATEBOARDS AND DIE CAST FIGURES, in International Class 28;

PROMOTING SPORTING EVENTS OF OTHERS; SPORT FIGURE LICENSING SERVICES; PROMOTING THE GOODS AND SERVICES OF OTHERS THROUGH THE DISTRIBUTION OF PRINTED MATERIALS AND CONTESTS, in International Class 35; and

ENTERTAINMENT SERVICES IN THE NATURE OF PERSONAL APPEARANCES BY SPORTS FIGURES; ENTERTAINMENT SERVICES, NAMELY, SPORTS EXHIBITIONS AND RELATED EVENTS; FAN CLUBS; AND MOTION PICTURE FILM, VIDEO AND WEB SITE PRODUCTION, in International Class 41.

LIVING LEGEND WRESTLERS

ABANDONED
NOV 7 2000

01-27-1999
S. Patent & TMOfc/TM Mail Rcpt Dt. #01

**TRADEMARK**

75629752

ZBYSZKO
00248



# EXHIBIT / ATTACHMENT

### _____ *D* _____

(To be scanned in place of tab)

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

| | | PAPER NO. |
|---|---|---|
| **SERIAL NO.**          **APPLICANT** | | |
| 75/629752   MAY, FRED | | |
| **MARK** | | |
| LIVING LEGEND WRESTLERS | | |
| **ADDRESS** | **ACTION NO.** | **ADDRESS:** |
| KEVIN G. SMITH | 02 | Assistant Commissioner |
| SHOEMAKER AND MATTARE, LTD. | | for Trademarks |
| SUITE 1203 CRYSTAL PLAZA BLDG. 1 | **MAILING DATE** | 2900 Crystal Drive |
| 2001 JEFFERSON DAVIS HIGHWAY | 03/01/00 | Arlington, VA 22202-3513 |
| ARLINGTON, VA 22202-0286 | | If no fees are enclosed, the address should include the words "Box Responses - No Fee." |
| | **REF. NO.** | |
| **FORM PTO-1525 (5-90)**   U.S. DEPT. OF COMM. PAT. & TM OFFICE | 91-503 | Please provide in all correspondence:<br><br>1. Filing Date, serial number, mark and Applicant's name.<br>2. Mailing date of this Office action.<br>3. Examining Attorney's name and Law Office number.<br>4. Your telephone number and ZIP code. |

A PROPER RESPONSE TO THIS OFFICE ACTION MUST BE RECEIVED WITHIN 6 MONTHS FROM THE DATE OF THIS ACTION IN ORDER TO AVOID *ABANDONMENT.* *For your convenience and to ensure proper handling of your response, a label has been enclosed. Please attach it to the upper right corner of your response. If the label is not enclosed, print or type the Trademark Law Office No., Serial No., and Mark in the upper right corner of your response.*

RE: Serial Number: 75/629752 LIVING LEGEND WRESTLERS

## FINAL OFFICE ACTION

This letter responds to the applicant's communication filed on December 6, 1999. In the foregoing communication, the applicant argued against the refusal to register applicant's mark under Section 2(e)(1) of the Trademark Act on the grounds that the applicant's mark is merely descriptive of the goods and services, and responded to an inquiry set forth in the First Office Action.

The examining attorney remains of the opinion that the applicant's mark, **LIVING LEGEND WRESTLERS** is merely descriptive of the identified goods and services in **International Classes 16, 35 and 41 only,** under Trademark Act Section 2(e)(1), 15 U.S.C. Section 1052(e)(1). Accordingly, the refusal to register is hereby continued and made **FINAL.**

Although the examining attorney has reviewed the applicant's response carefully, she is not persuaded by the applicant's arguments for the following reasons:

ZBYSZKO
00278

## REFUSAL

As stated previously, the applicant applied to register the mark LIVING LEGEND WRESTLERS for a variety of goods and services, including printed materials, namely, collector cards, bumper stickers, stickers, posters, souvenir programs concerning wrestling, mounted and unmounted photographs, and pictorial prints in International Class 16; promoting sporting events of others, sport figure licensing services, promoting the goods and services of others through the distribution of printed materials and promotional contests in International Class 35; and entertainment services in the nature of appearances by sports figures, entertainment services in the nature of wrestling exhibitions, fan clubs, and motion picture film and videotape production in International Class 41. Said mark was refused as descriptive pursuant to Section 2(e)(1). A mark is merely descriptive under Trademark Act Section 2(e)(1), 15 U.S.C. 1052(e)(1), if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the relevant goods and/or services. *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987); *In re Bed & Breakfast Registry, 791 F.2d 157, 229 USPQ 818 (Fed. Cir. 1986); In re MetPath Inc.*, 223 USPQ 88 (TTAB 1984); *In re Bright-Crest, Ltd.*, 204 USPQ 591 (TTAB 1979); TMEP section 1209.01(b).


## The Mark Is Descriptive Of The Goods

The applicant avers that the mark LIVING LEGEND WRESTLERS is not descriptive of the goods and services. In support of this argument, the applicant avers that the mark is merely suggestive of the applicant's goods and services, as the term "LIVING LEGEND" suggests, rather than describes, the individuals and the subject matter. See applicant's communication of December 6, 1999, pages 1-2. The applicant argues that the term "LIVING LEGEND" refers to certain things or certain people. The applicant then suggests that referring to specific things or people is not the same as describing them. This argument is not persuasive. The applicant is providing a variety of goods and services concerning, *inter alia*, wrestlers. The applicant was asked whether said wrestlers included renowned or famous wrestlers. In response, the applicant indicated that he was unable to provide a definite answer at this time. See applicant's communication of December 6, 1999, page 1. Based upon the applicant's identification of goods and recitation of services, and his inability to be more specific at this time, the examining attorney must presume that said goods and services concern, in part, **wrestlers** that can be described as **living legends**. By the applicant's own identification of goods and recitation of services, it is apparent that the goods and services in International Classes 16, 35 and 41 involve wrestlers. It is reasonable to presume that the wrestlers featured in the goods and services will be described as living legends. While the term LIVING LEGEND WRESTLERS does not describe all of the applicant's goods and services, it does describe a feature of the goods and services in International Classes 16, 35 and 41. The description of an ingredient of the goods or services is sufficient to refuse registration based upon Section 2(e)(1). *In re H.U.D.D.L.E.*, 216 USPQ 358 (TTAB 1982); *In re MBAssociates*, 180 USPQ 338 (TTAB 1973).

The examining attorney must consider whether a mark is merely descriptive in relation to the identified goods and/or services, not in the abstract. *In re Omaha Nat'l Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215 (CCPA 1978); *In re Venture Lending Assoc.*, 226 USPQ 285 (TTAB 1985). It is not necessary that a term describe all of the purposes, functions, characteristics or features of the goods and/or services to be merely descriptive. It is enough if the term describes one attribute of the goods and/or services . *In re H.U.D.D.L.E.*, 216 USPQ 358 (TTAB 1982); *In re MBAssociates*, 180 USPQ 338 (TTAB 1973). Here, the term LIVING LEGEND WRESTLERS describes a feature of some of the goods

ZBYSZKO
00273

and services in International Class 16, 35, and 41, including, the souvenir programs concerning wrestlers, promoting sporting events (presumably wrestling sporting events) and wrestling exhibitions. Presumably, these wrestling events and goods concern living legend wrestlers.

As stated previously, the applicant applied to register the mark LIVING LEGEND WRESTLERS for a broad variety of goods and services. The term LIVING LEGENDS is frequently used to describe famous living individuals with regard to a particular field. In addition to the evidence previously provided, the examining attorney refers to the excerpted article from a search in the LEXIS/NEXIS ® computerized database in which the term LIVING LEGEND in relation to WRESTLER appeared in 6 articles. A representative article is attached. See attachment.

The term LIVING LEGEND is a common, recognized term. As evidenced by the applicant's own identification of goods and recitation of services, the applicant's goods and services focus on wrestlers. It is presumed that said wrestlers are famous, or living legends, as this has not been disputed by the applicant. As such, no imagination is required to immediately understand that the term LIVING LEGEND WRESTLERS describes a subject of the applicant's goods and services.

### Third-Party Registrations Are Not Relevant To The Instant Application
The applicant argues that because other marks with the term "LIVING LEGEND" were registered, the instant application must be permitted to register on the principal register. This argument is also not persuasive. Third-party registrations are not conclusive on the question of descriptiveness. The examining attorney must consider each case on its own merits. A mark which is merely descriptive is not registrable merely because other similar marks appear on the register. *In re Scholastic Testing Service, Inc.*, 196 USPQ 517 (TTAB 1977).

### Conclusion
The applicant has not shown that the mark is anything but merely descriptive of a feature of its goods. The mark immediately names a specific feature of the goods and services and does nothing else. Accordingly, the mark is refused registration on the Principal Register under Section 2(e)(1) for the goods and services in International Classes 16, 35 and 41. The refusal to register the mark under Section 2(e)(1) is continued and made **FINAL**.

### Supplemental Register
Please note that the mark in an application under Trademark Act Section 1(b), 15 U.S.C. Section 1051(b), is not eligible for registration on the Supplemental Register until an acceptable amendment to allege use under 37 C.F.R. Section 2.76 or statement of use under 37 C.F.R. Section 2.88 has been timely filed. 37 C.F.R. Section 2.47(c); TMEP section 1105.01(a)(vii). When such an application is changed from the Principal Register to the Supplemental Register, the effective filing date of the application is the date of filing of the allegation of use. 37 C.F.R. Section 2.75(b); TMEP section 708.01.

### OPTIONS
Please note that the only appropriate responses to a final action are either (1) compliance with the outstanding requirements, if feasible, or (2) amending to the Supplemental Register after use has been established, or (3) filing of an appeal to the Trademark Trial and Appeal Board. 37 C.F.R.

75/629752                                    -4-

Section 2.64(a).  If the applicant fails to respond within six months of the mailing date of this refusal, this Office will declare the application abandoned. 37 C.F.R. Section 2.65(a).


If the applicant has any questions or needs assistance in responding to this Office action, please telephone the assigned examining attorney.


Andrea Koyner Nadelman
Trademark Attorney
Law Office 110
(703) 308-9110 extension 225

ZBYSZKO
00281

MAIL-IT REQUESTED: FEBRUARY 24, 2000                    .           10083K

      CLIENT:
     LIBRARY: NEWS
       FILE: US

YOUR SEARCH REQUEST AT THE TIME THIS MAIL-IT WAS REQUESTED:
 (LIVING LEGEND) W/10 WRESTLER

NUMBER OF STORIES FOUND WITH YOUR REQUEST THROUGH:
    LEVEL   1...       6

LEVEL    1 PRINTED

THE SELECTED  STORY NUMBERS:
4

DISPLAY FORMAT: 30 VAR KWIC

SEND TO: NADELMAN, ANDREA
        TRADEMARK LAW LIBRARY
        2101 CRYSTAL PLAZA ARC
        MAIL BOX 3104
        ARLINGTON VIRGINIA 22202-4600

**************************06607***********************************

ZBYSZKO
00282

LEVEL 1 - 4 OF 6 STORIES

Copyright 1996 Phoenix Newspapers, Inc.
THE ARIZONA REPUBLIC/THE PHOENIX GAZETTE

October 11, 1996 Friday, Final

SECTION: GLENDALE/PEORIA COMMUNITY; Pg. 1

LENGTH: 917 words

HEADLINE: HAMMERLOCK ON SUCCESS AND TRADITION;
WRESTLING GREAT STAYS NEAR ROOTS

BYLINE: By Jim Gintonio, Staff writer

BODY:
    ... 1995 Class 4A championship, and he coached his nephew, Gabe, now
wrestling at Arizona State University, to two state titles.

    He has another nephew in the program, one in the seventh-grade who vows to be
the best wrestling Chagolla ever, and Peoria **wrestlers** regard Sammy as a
**living legend** in a green suit.

    All that, plus all those photos around school of that nifty Wheaties box.

    But, Chagolla says, none of that is paramount. He's modest to a fault, and
says that every wrestling coach at Peoria is a head coach, and he ...

ZBYSZKO
00203



 **ATTACHMENT**

*E*

(To be scanned in place of tab)

Page 1

```
 1
 2              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF GEORGIA
 3                       ATLANTA DIVISION
                                         )
 4    LARRY WHISTLER a/k/a                )
      LARRY ZBYSZKO a/k/a                 )
 5    THE LIVING LEGEND,                  )
      an individual,                      )
 6                  Plaintiff,            )
                                          )      Civil Action
 7                                        )      No. 1-02-CV-1008
          v.                              )
 8                                        )
      WORLD WRESTLING FEDERATION          )
 9    ENTERTAINMENT, INC., a              )
      Connecticut Corporation,            )
10    VINCE MCMAHON, an individual,       )
      CHRIS IRVINE a/k/a CHRIS            )
11    JERICHO, a/k/a JERICHO, an          )
      individual,                         )
12                                        )
                    Defendants.           )
13    ----------------------------)
14                        Day, Berry & Howard, LLP
                          One Canterbury Green
15                        Stamford, Connecticut 06901
16                        January 29, 2003
                          3:30 p.m.
17
18      DEPOSITION OF DEFENDANT, VINCE MCMAHON, pursuant
19    to Agreement, taken at the above place, date and
20    time, before Dawn Tedesco, a Registered Professional
21    Reporter and Notary Public within and for the State
22    of Connecticut.
23
24                  SULLIVAN REPORTING
                    388 Tarrytown Road
25            White Plains, New York 10607
                    (914) 949-4545
```

COPY

1                          Vince McMahon

2    agreement with Jakks Pacific allowed Jakks Pacific

3    to distribute products within Georgia?

4         A.     I would assume it would.

5                Again, you seem to ask the same

6    questions over.  My response earlier was from the

7    United States standpoint, I don't think there was

8    any restrictions geographically from the United

9    States.  There may be some on an international basis

10   that I am unaware of.  So Georgia is part of the

11   United States.

12        Q.     Is there a term, a term "story line"

13   that's ever used in the wrestling industry or within

14   WWE?

15        A.     Story line?  Yes.

16        Q.     What is a story line?

17        A.     A story line in our business is no

18   different than a story line in a soap opera or

19   drama.  Same thing.  Come up with a concept,

20   involves characters.  It could be a story line or

21   subject matter about anything in life, pregnancy,

22   jealousy, inheritance, all sorts of things, you name

23   it.  And we've probably done it at one time or

24   another.

25        Q.     What's the purpose of having a story

1          Vince McMahon

2          A.     Yes, I do.

3          Q.     **And you were aware that during**

4     **Mr. Irvine's rise as the character Chris Jericho**

5     **that he was using the phrase Living Legend in**

6     **reference to himself?**

7               MR. KRASIK:  Objection.  I think that

8               misstates the record.

9          A.     That was one of the phrases he was

10    using.  In no way, in my professional opinion, do I

11    think that enhanced his image in any way.  It was a

12    trite expression that had been used and given by my

13    dad to Bruno Sammartino, and given by my dad to

14    Larry Zbyszko to create interest in the

15    Zbyszko/Sammartino matchup, and in no way did it

16    enhance Chris Jericho's image.

17         Q.     **Why was it used if it didn't enhance**

18    **his image?**

19               MR. KRASIK:  Objection.

20         A.     Again, we try to give our talent some

21    degree of autonomy.  Chris liked that in referring

22    to himself.  I told him it had been done before by

23    Bruno.  And didn't think it really enhanced -- I

24    didn't think it hurt him, but it didn't help.

25    Larger than life is the one he's using now.  And

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

LARRY WHISTLER )
a/k/a LARRY ZBYSZKO )
a/k/a THE LIVING LEGEND, )
an individual, )
)      Civil Action No.  1 02-CV-1008
        Plaintiff, )
)
vs. )
)
WORLD WRESTLING )
ENTERTAINMENT, INC., a Delaware )
corporation, )
)
        Defendants. )

## CERTIFICATE OF SERVICE

I hereby certify that on this _5_ th day of March, 2004, I served opposing counsel with the foregoing ***Reply to Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment*** by hand delivery to the following address:

Joel D. Myers, Esquire
Myers & Kaplan Intellectual Property Law LLC
1899 Powers Ferry Road, Suite 310
Atlanta, Georgia  30339

_____
Attorneys for Defendant
World Wrestling Entertainment, Inc.

John L. Taylor, Jr.
Georgia Bar No. 700400
Celeste McCollough
Georgia Bar No. 487013

**CHOREY, TAYLOR & FEIL, P.C.**
The Lenox Building, Suite 1700
3399 Peachtree Road, N.E.
Atlanta, Georgia 30326
Telephone: (404) 841-3200
Facsimile: (404) 841-3221

and

Jerry S. McDevitt
Curtis B. Krasik
Julie R. Fenstermaker
**KIRKPATRICK & LOCKHART, LLP**
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501