IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LARRY WHISTLER a/k/a              :
LARRY ZBYSZKO a/k/a               :
THE LIVING LEGEND, an individual, :
                                  :
            Plaintiff,            :
                                  :
v.                                :   CIVIL ACTION NO.
                                  :
                                  :   1:02-CV-1008-CC
WORLD WRESTLING                   :
ENTERTAINMENT, INC., a            :
Delaware corporation,             :
                                  :
            Defendant.            :

**ORDER**

Pending before the Court in this action for trademark infringement are the following motions: (1) Defendant World Wrestling Entertainment Inc.'s ("WWE") Motion to Compel; (2) WWE's Motion for Summary Judgment on Trademark-Related Issues; (3) WWE's Motion for Summary Judgment on the Basis of Judicial Estoppel; (4) Plaintiff Larry Whistler a/k/a Larry Zbyszko a/k/a The Living Legend's ("Plaintiff") Motion to Compel; (5) Plaintiff's Motion to Dismiss Without Prejudice Due to Lack of Standing; and (6) Bankruptcy Trustee's Motion for Substitution.

I.   SUMMARY OF FACTUAL BACKGROUND[1]

Plaintiff, a resident of Georgia, is a wrestler who has engaged in wrestling entertainment services since at least 1980. WWE is a media and entertainment company principally engaged in the development, production and promotion of television programming, pay-per-view programming and live arena events. WWE also engages in an extensive licensing program pursuant to which WWE's

---

[1] In light of the Court's ruling on WWE's motion for summary judgment on the basis of judicial estoppel, only those facts pertinent to the Court's rulings below or necessary to put the Court's rulings in context are discussed here.

copyrighted characters, trademarks, service marks and other intellectual property rights are depicted on a myriad of consumer products, including video games, action figures and clothing.

Plaintiff filed the instant action on April 17, 2002, against WWE, Vince McMahon ("McMahon), and Chris Irvine a/k/a Chris Hericho a/k/a Jericho ("Irvine"), alleging trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), unfair competition and misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), as well as several claims under state law.  McMahon's and Irvine moved to dismiss Plaintiff's claims against them for lack of personal jurisdiction, which motion was granted by this Court on August 8, 2003.  As such, only WWE remains as a defendant.

In this action, Plaintiff claims that he has used "The Living Legend" as a trademark for entertainment services, namely personal appearances by a wrestler, wrestling exhibitions, and sports and entertainment commentary.[2]  Plaintiff acknowledges, however, that Bruno Sammartino ("Sammartino"), who wrestled for WWE[3] from the 1960s through the 1980s, used the term "The Living Legend" prior to Plaintiff's use of the term.  As part of his wrestling feud with Sammartino in a

---

[2] Approximately six weeks before the filing of this lawsuit, on March 1, 2002, Plaintiff filed a trademark application with the United States Patent and Trademark Office ("USPTO") for "The Living Legend" mark.

[3] When Sammartino first began wrestling for WWE, the company was known as Capital Wrestling, Inc. d/b/a World Wide Wrestling Federation.  After several name changes, in May 2002, the company changed its name again to its current name, World Wrestling Entertainment, Inc.  For ease of reference, "WWE" refers to the company's current name, as well as all predecessor entities.

WWE storyline in or around 1980,[4] Plaintiff, playing the role of a "heel" or bad guy, began calling himself "The New Living Legend" to draw a negative reaction from the fans by usurping and disrespecting the famous nickname of Sammartino, the beloved good guy.  The entire premise of the storyline was that the fans recognized Sammartino as "The Living Legend" and, therefore, would negatively react to Plaintiff calling himself "The New Living Legend."[5]

Witnesses for Plaintiff acknowledge that other wrestlers have also been called "living legends."  Plaintiff also concedes that over the 20 years he claims to have used "The Living Legend," he has used a variety of different phrases, including "The Living Legend Larry Zbyszko," The New Living Legend Larry Zbyszko," and "The Legend Larry Zbyszko."

On February 4, 2002, Plaintiff filed a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code.  After initial confirmation of a Chapter 13 plan, Plaintiff's Chapter 13 bankruptcy was dismissed on November 15, 2002 for default on payments due under the plan.  While Plaintiff's Chapter 13 bankruptcy petition was filed prior to the initiation of this action, Plaintiff did not supplement his Chapter 13 filings to disclose this lawsuit after it was filed, despite the fact that he did file Amendments to Chapter 13 Petition, Schedules and Plan on May 14, 2002, amending his Chapter 13 filings in various other respects.[6]

---

[4] As part of its sports entertainment product, WWE develops storylines based around WWE's wrestling characters.  These characters interact with one another and progress through the fictitious world of WWE by forming alliances and rivalries with other groups and wrestlers.  While Plaintiff attempts to dispute this fact, he provides no support or explanation why such a description of WWE's product would be false.

[5] Plaintiff last wrestled for WWE in 1980.

[6] Once again, without any support, Plaintiff attempts to dispute this fact.  However, a certified copy of Plaintiff's entire Chapter 13 Bankruptcy file is in the record

Approximately nine months after initiating this lawsuit, on January 3, 2003, Plaintiff filed a voluntary petition for Chapter 7 bankruptcy. As required in a Chapter 7 bankruptcy, Plaintiff submitted a Statement of Financial Affairs with the Bankruptcy Court on January 28, 2003. Pursuant to Item 4 of the Statement of Financial Affairs, entitled "Suits and administrative proceedings, executions, garnishments and attachments," Plaintiff was required to "list all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." *See* Notice of Filing Certified Copy of Chapter 7 Bankruptcy File and Statement of Financial Affairs contained therein. Plaintiff responded to Item 4 by checking the box for "None." Id. Schedule B to the Statement of Financial Affairs entitled "Personal Property," similarly required Plaintiff to identify in response to Item 20, "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims" and directed, "Give estimated value of each." Again, Plaintiff responded by placing an "X" in the column for "None."[7] Id. In addition, in response to Item 21 of Schedule B regarding "Patents, copyrights, and other intellectual property," Plaintiff did not identify "The Living Legend" trademark he claims to own or his application to register the mark with the USPTO. Plaintiff purported to verify the information contained in the Statement of Financial Affairs and Schedule B in two separate declarations sworn under penalty of perjury. Based

---

in this case, and such file demonstrates that Plaintiff did not supplement or amend his file to disclose the existence of this lawsuit.

[7] Plaintiff gave a deposition in this action on January 27, 2003, the day before he filed his Statement of Financial Affairs, yet he still failed to disclose the existence of this lawsuit in his bankruptcy filings. Plaintiff's unsupported attempt to dispute this fact, as well as his attempt to dispute that he placed an "X" in the column for "None" regarding any contingent or unliquidated claims, are absolutely baseless.

upon Plaintiff's Statement of Financial Affairs and Schedules, the bankruptcy trustee filed a Report of No Distribution noting that there was no property available for distribution from the estate over and able that exempted by law. Thereafter, the Bankruptcy Court granted Plaintiff a "no asset" discharge of his debts, which was an amount in excess of $66,000.

II.   DISCUSSION

A.   WWE's and Plaintiff's Motions to Compel

WWE filed a motion to compel Plaintiff's responses to its First Request to Produce and its First Merits Interrogatories on the ground that Plaintiff's responses were deficient in several respects. Plaintiff filed a response stating that he supplemented his discovery responses in a letter to WWE's attorney wherein he addressed each of the shortcomings raised by WWE in its motion to compel. Instead of filing a reply, shortly after filing its motion to compel, and before the motion was ruled on, WWE filed the pending motions for summary judgment.

On the same day that WWE filed its motions for summary judgment, Plaintiff filed a motion to compel WWE's responses to Plaintiff's Request for Admissions and First Merits Interrogatories on the ground that certain of WWE's responses were deficient. However, Plaintiff's motion to compel fails to quote verbatim each discovery request to which objection is taken as required by NDGa. LR 37.1A(2), and he has selectively quoted out of context only fragments of WWE's responses, thereby omitting WWE's substantive responses. Further, despite Plaintiff's counsel's certification that he attempted to confer in good faith with defense counsel to resolve the discovery dispute, it appears from the record that, in reality, Plaintiff's counsel failed to confer in good faith in violation of Fed.R.Civ.P. 37 and LR 37.1. In this regard, when WWE's counsel expressed confusion regarding WWE's allegedly deficient discovery responses identified in Plaintiff's counsel letter regarding the

same, and he stated more than once that WWE was willing to discuss any specific questions or concerns that Plaintiff may have had, Plaintiff's counsel never contacted WWE's counsel with his specific questions or concerns either by telephone or in writing, but instead proceeded to file the instant motion to compel.

Regardless of the merits, or lack thereof, of the parties' motions to compel, in light of the Court's ruling below regarding WWE's motion for summary judgment on the basis of judicial estoppel, both WWE's and Plaintiff's motions to compel are moot, and the motions are denied on that basis.

> B.      WWE'S Motion for Summary Judgment Based on Judicial Estoppel

Relying on three cases decided by the Eleventh Circuit in 2002 and 2003 that are virtually identical to the instant case, WWE contends that Plaintiff's claims in this action are barred as a matter of law by the doctrine of judicial estoppel. For the reasons that follow, this Court agrees.

The Eleventh Circuit has explained the judicial estoppel doctrine as follows:

> Judicial estoppel is an equitable doctrine that precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceedings." The doctrine exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."
>
> The applicability of judicial estoppel largely turns on two factors. First, a party's allegedly inconsistent positions must have been "made under oath in a prior proceeding." Second, the "inconsistencies must be shown to have been calculated to make a mockery of the judicial system." "These two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine."

Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1293-94 (11th Cir. 2003) (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1284, 1286 (11th Cir. 2002)).

In the present case, Plaintiff filed a Chapter 7 bankruptcy petition approximately nine months after he had filed the instant lawsuit. As required in a Chapter 7 bankruptcy, Plaintiff submitted a Statement of Financial Affairs with the

- 6 -

Bankruptcy court on January 28, 2003, which was one day after he had given a deposition in the instant action. However, Plaintiff did not disclose the existence of this lawsuit on the Statement or the attached Schedule B, despite being required to list any suits to which he was a party and any contingent or unliquidated claims. Plaintiff's Statement of Financial Affairs was submitted under oath to the Bankruptcy Court and was verified to be true in two separate declarations sworn under penalty of perjury.[8]

      Because it is clear that Plaintiff submitted his Statement of Financial Affairs under oath and under penalty of perjury, the issue in this case is Plaintiff's intent in failing to disclose the existence of this action in his Bankruptcy Court filings. "'Deliberate or intentional manipulation can be inferred from the record,' where the debtor has knowledge of the undisclosed claims and has motive for concealment." Id. at 1294 (quoting Burnes, 291 F.3d at 1287). Plaintiff contends that his omission regarding the existence of this action was the result of simple error and inadvertence rather than purposeful contradiction. According to Plaintiff, he had at least two conversations with his bankruptcy attorney about this lawsuit, and he assumed that if it was legally required to be disclosed in his bankruptcy filings, his attorney would have disclosed it. Plaintiff further states that, because his bankruptcy attorney was familiar with his situation, including the instant litigation, Plaintiff did not review the information contained in the bankruptcy paperwork before he signed it. As soon as his present counsel informed Plaintiff of the oversight, Plaintiff immediately called another bankruptcy attorney and instructed him to begin the process to reopen

---

[8] As noted above, Plaintiff had also filed a Chapter 13 bankruptcy petition prior to the initiation of this lawsuit. During the pendency of his Chapter 13 bankruptcy petition, Plaintiff filed the instant action, but he never supplemented his Chapter 13 filings to disclose this lawsuit before the Chapter 13 petition was dismissed.

his bankruptcy case so that the present litigation could be disclosed. Plaintiff avers that his "lack of knowledge of this oversight was certainly unintentional and was not intended to make a mockery of the legal system." Plaintiff's Response and Memorandum in Opposition to Motion for Summary Judgment on the Basis of Judicial Estoppel, Affidavit of Larry Whistler, ¶ 10.

Plaintiff has not submitted an affidavit from his bankruptcy attorney admitting that the lack of disclosure of the instant litigation was due to his own oversight. However, even if Plaintiff's failure to disclose the existence of this lawsuit could be blamed on his bankruptcy attorney, "the nondisclosure could not in any event be considered inadvertent." Barger, 348 F.3d at 1295. A "debtor's failure to satisfy its statutory disclosure duty is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Burnes, 291 F.3d at 1287; *see also*, De Leon v. Comcar Industries, Inc., 321 F.3d 1289, 1291 (11th Cir. 2003) ("judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court. . . ."). In the present case, Plaintiff clearly had knowledge of this lawsuit, and the omission of its existence in his bankruptcy filings certainly could be found to have worked to Plaintiff's benefit because "it is unlikely he would have received the benefit of . . . a no asset, complete discharge had his creditors, the trustee or the bankruptcy court known of a lawsuit claiming millions of dollars in damages."[9] Burnes, 291 F.3d at 1288; *see also*, Barger, 348 F.3d at 1296 ("Omitting the discrimination claims from the schedule of assets appeared to benefit [plaintiff] because, by omitting the claims,

---

[9] In Plaintiff's counsel's letter to WWE dated March 23, 2003, Plaintiff valued his claims to be at least $2.7 million. More recently in response to WWE's interrogatories, Plaintiff claimed damages of over $35 million.

she could keep any proceeds for herself and not have them become part of the bankruptcy estate").

Any claim by Plaintiff that his motion to reopen the bankruptcy proceeding so that the existence of this lawsuit could be disclosed negates any finding of intentional concealment on his part has also been foreclosed by the recent Eleventh Circuit authority. By way of example, in Barger, after a hearing before the Bankruptcy Court on the issue of her failure to disclose her employment discrimination suit in her bankruptcy filings, the Bankruptcy Court found that the omissions in Ms. Barger's filings were inadvertent and were due solely to her bankruptcy counsel's oversight, and the Court reopened her bankruptcy case. Despite this favorable decision by the Bankruptcy Court, the Barger Court found as follows:

> Barger's attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like. She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds. "Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." Burnes at 1288 (citation omitted). As such, Barger's disclosure upon re-opening the bankruptcy estate deserves no favor.

Barger, 348 F.3d at 1297. In the present case, Plaintiff too only sought to amend his bankruptcy filings after WWE had moved for summary judgment on the basis of judicial estoppel, and such an attempt by Plaintiff to re-open his bankruptcy case does nothing to prevent the grant of summary judgment on judicial estoppel grounds. *See* Barger, *supra*; De Leon, 321 F.3d at 1291-92; Burnes, 291 F.3d at 1288; *see also*, Traylor v. Ford, 185 F.Supp.2d 1338, 1340 (N.D.Ga. 2002).

Accordingly, for the above-stated reasons, WWE's motion for summary

judgment on the basis of judicial estoppel is GRANTED.[10] In light of this ruling, WWE's motion for summary judgment on trademark related issues is now moot, and is denied on this basis.[11]

III. CONCLUSION

WWE's Motion to Compel [33-1] is DENIED as moot. WWE's Motion for Summary Judgment on Trademark-Related Issues [37-1] is DENIED as moot. WWE's Motion for Summary Judgment on the Basis of Judicial Estoppel [37-2] is GRANTED. Plaintiff's Motion to Compel [44-1] is DENIED as moot. Plaintiff's Motion to Dismiss

---

[10] After WWE had filed its motion for summary judgment, pursuant to Fed.R.Civ.P. 17(a) or, in the alternative, 41(a)(2), Plaintiff filed a motion to dismiss without prejudice due to lack of standing on the ground that the bankruptcy trustee is the real party in interest and has exclusive standing to assert any trademark claims. At the time that Plaintiff filed this motion, no trustee had been appointed and his bankruptcy case had not yet been reopened, and thus Plaintiff remained the real party in interest. Plaintiff's motion to dismiss without prejudice is clearly a last ditch effort to avoid the dismissal of his claims on the merits pursuant to WWE's motion for summary judgment. In any event, even if a trustee had been appointed and Plaintiff's bankruptcy case had been reopened, dismissal of this case without prejudice would not be warranted. In Barger, the Court found that the Trustee was the real party in interest in that lawsuit, and ruled that the Trustee should be substituted for the plaintiff from that point forward. Barger, 348 F.3d at 1292-93. Having substituted the bankruptcy trustee for the plaintiff in the litigation, the Eleventh Circuit went on to find that the claims in the case, whether asserted by the bankruptcy trustee or the plaintiff, were barred as a matter of law on the basis of judicial estoppel. Thus, even if the bankruptcy trustee were substituted for Plaintiff in the instant action, Plaintiff's claims would still be barred and summary judgment would be proper. Accordingly, Plaintiff's motion to dismiss for lack of standing is denied as moot. Further, because the doctrine of judicial estoppel bars the claims asserted in this lawsuit, the later filed motion by Bankruptcy Trustee Edwin Palmer for substitution as the plaintiff in interest is also denied as moot.

[11] The Court notes here however, that insofar as it is undisputed that WWE identified Bruno Sammartino as "The Living Legend" long before Plaintiff's use of the term, and further as Plaintiff has failed to come forward with evidence sufficient to create a genuine issue of fact that the term "The Living Legend" is capable of trademark protection, summary judgment would also be warranted for this reason.

Without Prejudice Due to Lack of Standing [49-1] is DENIED as moot.  Bankruptcy Trustee's Motion for Substitution [69-1] is DENIED as moot.

This action is hereby DISMISSED WITH PREJUDICE.

SO ORDERED this 26th day of July, 2004.

*s/   Clarence Cooper*

CLARENCE COOPER
UNITED STATES DISTRICT JUDGE